[No. 517.  Decided March 17, 1892.]

THE STATE OF WASHINGTON, *on the relation of Henry Hewitt, jr., Petitioner,* v. B. L. SHARPSTEIN, H. C. WARNER, A. MIRES, ALLEN WEIR, T. M. REED, *comprising the board of equalization and appeal of the State of Washington, Defendants.*

TIDE LANDS—APPRAISAL.

Under § 5 of the act of March 26, 1890 (Laws 1889–90, p. 432), providing that county boards of appraisers shall meet in "their respective counties within thirty days after the location of the harbor lines in front of incorporated cities and towns," and that after organization they shall "examine, survey and appraise so much of the shore and tide lands . . . as lies within or in front of the corporate limits of any incorporated city or town, and within two miles thereof; . . . and thereafter from time to time such other lands as application to purchase may render necessary," a county board of appraisers cannot lawfully organize to survey and appraise tide lands of the third class before the harbor lines of the county have been established.

*Original Application for Mandamus.*

*Brown & Brownell,* for petitioner.

*James A. Haight,* for respondents.

The opinion of the court was delivered by

HOYT, J.—It is conceded by the relator that two questions are involved in the determination of this case: (1)

Can it be officially known what are tide lands of the third class until the tide lands of the first class are ascertained by the establishment of harbor lines in the county?   (2) Can the county board of appraisers lawfully organize to survey and appraise tide lands of the third class before the harbor lines of the county have been established?   It is further conceded that if either of these questions must be answered in the negative, the prayer of relator should be denied.   The answer to the second question above stated must be determined from a construction of § 5 of the act of March 26, 1890, relating to tide lands.   Said section is as follows:

"SEC. 5.  Said board of appraisers shall meet at the county seat of their respective counties within thirty days after the location of the harbor lines in front of incorporated cities and towns, and, after taking an oath to support the constitution and the laws of Washington, and faithfully and impartially discharge their duties, shall organize by electing one of their number chairman and appointing a secretary.   After the organization of the board is provided, they shall, within ninety days thereafter, examine, survey and appraise so much of the shore and tide lands in their respective counties as lies within or in front of the corporate limits of any incorporated city or town, and within two miles thereof, upon either side, and thereafter, from time to time, such other lands as application to purchase may render necessary, classifying the same and fixing the valuation of each lot, block or tract separately, noting the improvements thereon and by whom claimed, and excluding the improvements from such valuation."

It is conceded by relator that the language of said section would seem to indicate an intention on the part of the legislature to provide that the board of appraisers in each county should not organize until the harbor lines of such county had been established, and to provide that tide lands of the third class should only be appraised *after* those of the first class.   He contends, however, that such a construc-

tion of said section would lead to such hardships, and is so opposed to public policy that the court would be justified in holding that the legislature could not have so intended. He argues that as the result of holding that the legislature intended as above stated would be to tie up all the tide lands in many counties of the state for an indefinite number of years, and thereby prevent the making of necessary improvements, and the growth of the state be thereby greatly hindered, it becomes the duty of the court to interpret the language used in some other way and thus avoid such injurious results.

That there is much force in these positions is evident to all, and did we see our way clear to do so we should be glad to adopt some other construction of the language of said section. But our constitution makers contented themselves with asserting that the title to such tide lands was in the state, and left the question of how and when they should be disposed of to be determined by the uncontrolled will of the legislature. This being so, the intention of the legislature in regard to this question must be gathered from what has been said, not from any supposed intention other than that evidenced by the language used. The act stands alone, and from it the intention must be gathered. Is there anything therein that will justify us in applying other than the usual rules in construing the language of the section in question? Relator contends that it is evident from said act as a whole that an early completion of the work of such boards was contemplated. This is perhaps true, but it does not follow that the motive was alone to hasten the alienation of such lands. On the contrary, it seems to us that the leading motive was the saving of expense. If this is true, then there would be reason in delaying the organization of these county boards until such a time as the bulk of their work was ready for them. Until such organization they could incur no expense. The bulk

of their work would be in appraising the tide lands of the first class and the legislature might well have intended that any expenses incident to maintaining such boards as organizations should only be incurred after their work was ready for them.  We can find nothing in the act that will justify us in holding that the legislature intended that other than the ordinary construction should be given to the language of the section in question.  We do not think it reasonable to hold, as contended for by relator, that the provision that they shall meet within thirty days after the location of the harbor lines is simply a limitation of the time beyond which they cannot postpone their first meeting.  The reasonable and ordinary construction of said provision would be, that their first meeting must be held within a certain period of thirty days, and that said period would not commence to run until the harbor lines for the county had been established.  Such provision could not be construed otherwise without doing injustice to well-settled rules of construction.  Such construction is necessary in order that such provision should harmonize with the further provision of said section which provides that such boards shall first examine and appraise tide lands of the first class, and *thereafter* other tide lands.  Said second question, then, must be answered in the negative, and as such answer must result in the denial of the writ, it is not necessary for us to discuss the other question.

Writ denied and petition dismissed.

SCOTT and DUNBAR, JJ., concur.

STILES, J.—I concur in the result simply because I think I am compelled to by the letter of the statute.  I do not concede for a moment that it could have ever been the sensible intention of the legislature to make the disposal of tide lands of the third class depend on the tardy action of the harbor line commissioners, whether that tardiness be

caused by their mere inaction or enforced delays arising from injunctions or from any other cause. I believe the condition in which we find this act is due to. pure oversight or negligence.

ANDERS, C. J., not sitting.