# MILTON *v.* KINGSLEY.

## PATENTS; PARTNERSHIP.

1. Where an agreement was made between an inventor and another, whereby the inventor assigned a controlling interest in his present and future inventions relating to a particular subject, in consideration of the assignee furnishing funds for procuring patents and for exploiting the invention and improvements, it was *held* in an interference proceeding subsequently arising between them involving priority of an invention of an improvement, that the sole question in issue was which party procured from the other the idea of the invention, as the reduction to practice might be regarded as the act of either.

2. In such a case, the assignee being a partner of his assignor, if he made the invention in question, will not be allowed to repudiate his partnership obligation by procuring a patent in his own name and in which his partner has no interest. One partner cannot without the consent of his co-partner carry on for his own exclusive use any business within the scope of the partnership.

3. The original inventor and assignor in such an interference proceeding, will be entitled to the patent for the improvement, whether he is the actual prior inventor of the improvement or not.

4. If one party has appropriated the invention of another and claims it as his own, in an interference proceeding between them, there can properly be no question of priority of invention or of prior inventor. There is but one inventor and the other is merely a claimant without right; and rival claims of such parties constitute a proper subject for interference proceedings in the Patent Office.

No. 29. Patent Appeals. Submitted November 12, 1895. Decided January 8, 1896.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed*

The COURT in its opinion stated the case as follows:

This is an appeal from the decision of the Commissioner of Patents in an interference case.

The issues of invention, on which the interference is based, are stated in the record to be the following:

1. In a boiler furnace, the combination with the fire-box and flues of a grating in proximity to and extending over the grate surface and between it and the flues, such grating being composed of perforated fire-clay conduits, through the spaces between which the products of combustion must pass, and water pipes in communication with the water space of boiler, supporting and holding in place the fire-clay conduits, but having no rigid connection therewith.

2. In a boiler furnace a grating comprising a plurality of water pipes arranged in pairs and perforated air pipes composed of refractory material supported and held upon the pairs of water pipes.

3. In a boiler furnace a grating composed of pairs of parallel water pipes extending across the interior of the fire-box and communicating with the water space of the boiler combined with air conduits formed of joined sections of fire-clay pipes having lateral jet holes and seats on their lower sides for the water pipes, said air conduits extending down between the water pipes of each pair, and air-feeding pipes having funnels at their front ends and communicating with the air conduits in the fire-box.

From which it appears that the invention in question is one of the numerous devices by which it is sought to consume smoke in locomotive and other boiler furnaces, and to get rid of the nuisance created by such smoke.

The ideas which led up to the invention, it is conceded, were those of the appellant, John Milton, who had been an inventor for many years, and who had been experimenting in this direction for a considerable time, and who, as it appears, has already taken out patents on cognate devices, and has other applications for patents now pending. Being, like most inventors, without means to prosecute his applications, he came, in or about the month of June, 1892, to the appellee, Albert F. Kingsley, a merchant in Washington, for the purpose of interesting him in his schemes. Kingsley examined the matter; and the result of the examination was that, on October 8, 1892, the two entered

into a contract in writing under seal, wherein, after reciting that the appellant Milton was the inventor of a smoke-burning device for locomotives and other purposes, for which application for letters patent had been made and was then pending in the Patent Office, the appellee Kingsley agreed to furnish all the necessary funds for costs and fees in procuring letters patent for the invention and for all improvements thereon, both in this and in foreign countries, such as might be deemed desirable ; and also for the cost and expense of experimenting with the invention, testing and developing the same, and introducing it into general use. The contract further provided that Kingsley should give his personal attention to the introduction of the device into general use, in the event that letters patent should be procured thereon ; and in the event that the device should be found to be valuable, he was to give his entire time, attention and ability to the management of the business for the benefit of both parties. In consideration of these covenants by Kingsley, the appellant Milton agreed that he would assign to the appellee three-fifths interest in the invention and in the letters patent when allowed, and in all the improvements thereon that should thereafter be made ; and that he would do everything in his power to promote the interests of the parties. The net profits were to be divided between the two parties in the proportion of three-fifths to Kingsley, and two-fifths to Milton.

In pursuance of this agreement, Milton continued his experiments, and Kingsley entered actively upon the work of making them available. Five applications for patents were filed in Milton's name for smoke-consuming devices, two of them before the actual execution of the agreement and three afterwards, for all of which Kingsley paid the expenses. Four of these applications were allowed and patents were issued upon them ; one application, the first in the order of time, was rejected. The invention at this time was not of perforated fire-brick conduits, but of perforated cast or wrought iron conduits.

Through attorneys whom he interested in the matter by an assignment of one-tenth interest in the invention, given by him as compensation in his alleged inability to pay fees in cash, Kingsley procured an experiment of the invention to be made by the Baltimore and Ohio Railroad Company. The test was made by that company upon one of its engines, No. 810. The test was satisfactory in showing that the device would consume the smoke as desired; but it was unsatisfactory in the fact that the iron of the conduits could not stand the intense heat to which it was subjected and would burn out. Then it was that the substitution of fire-clay in the place of iron for the conduits was suggested. With this substitution, the device was again tested on another engine of the same railroad company, and proved successful in every respect.

At this point the controversy between the parties began; for thus far they seemed to have gone on harmoniously together. Kingsley claimed that the suggestion of fire-clay conduits, in the place of iron conduits, was his idea and his invention; and he proceeded to file an application in his own name for a patent therefor—although he appears to have been willing at the time to make the application in the name of Milton, who was sick at his place in the country. He states that he was advised that, if the invention was his own and not that of Milton, he could not file the application in the name of the latter. As soon as Milton recovered from his illness, he also proceeded to make application for letters patent for the fire-brick device, which he claimed to be his own idea, and to have been communicated by him to Kingsley. Upon these rival applications the present interference was declared.

After issue joined and testimony taken between the parties, the examiner of interferences awarded priority of invention to the appellant Milton. Kingsley appealed to the board of examiners-in-chief; and they awarded the priority of invention to Kingsley. And upon appeal by Milton to the Commissioner of Patents, the latter affirmed the deci-

sion of the board of examiners. From this decision Milton has prosecuted the present appeal to this court.

*Mr. Benjamin Butterworth* and *Mr. Julian C. Dowell* for the appellant.

*Mr. Marcellus Bailey* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court :

As appears from the statement of the case, the controversy here does not seem to be between two independent inventors, operating at the same time in the same field of invention without knowledge of each other. The question at issue is simply which party procured from the other the idea of the invention. For under the circumstances of the case the reduction to practice might be regarded as the reduction to practice of either contestant, and should undoubtedly inure to the benefit of the one who generated the idea.

In the determination of the controversy we do not deem it necessary to examine the testimony in detail, as it was proper for the officials of the Patent Office to do. In fact, we prefer to place our decision upon an entirely different ground from that taken in the Patent Office, but which seems to us to be fully justified by the record.

By their contract of October 8, 1892, the parties established between themselves the fiduciary relations of a partnership for the prosecution of a common enterprise. To this partnership the appellant, Milton, agreed to contribute his invention and all improvements thereon that might thereafter be made ; and the appellee, Kingsley, was to defray the expense of all letters patent and of the management of the business to result therefrom. Kingsley was a man of business, not an inventor. It is true that he states, as proof of the existence of the inventive faculty in him, that at one time he ran an engine ; but it does not appear what kind of an engine it was, or in what capacity Kingsley was connected

with it. Whatever capacity for invention or discovery he manifested in the transactions detailed in the record before us, was the result of his possession of the ideas of Milton, into which possession he came in his fiduciary capacity as a partner and for the fiduciary purpose of exploiting them for the benefit of the partnership.

It is of no consequence here, as between these parties themselves, that some of the ideas of Milton may have been anticipated by other persons, as it is claimed they were; and that some of them may have proved to be impracticable. That was a contingency contemplated by them in their contract, although perhaps not anticipated. Such as they were, the devices of Milton were deemed, both by himself and Kingsley, at the time of their agreement, to be novel, useful and feasible. As between themselves, Milton was the sole and exclusive inventor of the whole smoke-consuming device which was tested in this case and which was ultimately found to be practicable, with the exception that he used iron conduits, instead of the fire-clay conduits, which constituted the distinctive feature of the final experiment. The device which was confessedly produced by Milton, was entirely successful in the consumption of the smoke; but it was not practicable, or rather merchantable, as the expression is, because the iron conduits could not withstand the intense heat to which they were exposed. The perfection of the device was therefore to be found in the adoption of some material for the conduits that would withstand the heat; and that material was found to be fire-clay. This discovery is claimed by Kingsley as his own invention.

But it is very plain that Kingsley, if he did discover the fire-clay conduits, discovered it only in the elaboration and reduction to practice of Milton's ideas, and for the reason that he had been placed in possession of those ideas for the purpose of their elaboration. Shall he now be permitted to repudiate his obligations to Milton, to appropriate Milton's ideas and Milton's labors to his own use and benefit to the exclusion of Milton, and to procure for himself a patent in

which the latter is to have no interest ?   We think that to allow this would be to place a premium upon bad faith.

At the time at which the contract was entered into between them, the parties evidently contemplated that there would probably be improvements upon the original device, which might themselves be independently patentable ; for it was specifically provided that Kingsley should pay the expense of procuring letters patent for any and all such improvements.   It was probably not contemplated that Kingsley would be the inventor of any such improvements.   But it was certainly not contemplated that he should be let into the secrets of the invention, become a partner in the business of its development, become entitled to a share, and that too by far the larger share, of the profits of the partnership, and yet be himself entirely free to experiment with the invention as he pleased, and the result of his experiments, if they developed any novel feature, to appropriate to his own use and benefit.   Assuming that the contract is silent upon this point, we hold that any such appropriation of results by the appellee to his own exclusive use and benefit would be a fraud upon the partnership.

It is in direct antagonism to the fundamental theory of the law of partnership that one partner should, without the consent of his copartners, carry on for his own exclusive advantage any business within the scope of the business of the partnership.   *Wheeler* v. *Sage*, 1 Wall. 518 ; Story on Partnership, secs. 174, 175, 177, and cases cited in the notes.   And this rule of good faith and fair dealing is as applicable to partnerships entered into for the purpose of perfecting and exploiting inventions in the useful arts as to any other class of partnerships.   Indeed, it is not easy to imagine a case wherein the rule of good faith between partners is more applicable than in the case now before us.

We regard it as well settled law that, when one who has conceived the principle or plan of an invention employs another to perfect the details, and to realize his conception, and the employee devises new and valuable improvements

in the original conception or invention, the improvements belong to the employer, and not to the employee. Curtis on Patents, secs. 120, 123. It seems equally and upon similar grounds to be the dictate of equity and good conscience that one whose contractual relations with an inventor are those of partnership which require him in express terms or by necessary implication to use his best efforts to promote the invention and all the improvements thereon for the benefit of the partnership, and who himself has made an improvement on the invention, stimulated solely by the possession of the original inventor's ideas under the contract, should not be permitted to claim the improvement as his own to the exclusion of his copartner, the original inventor. We think that this is the reasonable deduction to be made from all the cases. *Dixon* v. *Moyer*, 4 Wash. 68; *Allen* v. *Rawson*, 1 Manning, Granger & Scott, 551; *Agawam Company* v. *Jordan*, 7 Wall. 583; *O'Reilly* v. *Morse*, 15 How. 62; *Bloxam* v. *Elsee*, 1 Car. & Payne, 567.

It might be a question under some circumstances whether the employee or person in a fiduciary relation to the original inventor should not be regarded in a technical sense under the terms of the law as being entitled to have letters patent issued to him in his own name for improvements devised by him, subject to the processes of equity to compel an immediate assignment thereof to the original inventor. But we understand the jurisdiction of this court in the premises to be of an equitable as well as of a purely legal and technical character; and that circuitous course, under the circumstances, would seem to be wholly unnecessary.

The appellee in the first instance, does not seem to have claimed any right antagonistic to the appellant. He seems to have been willing to have the application for the patent for the improvement made in the name of the appellant; and even after the application was made in his own name, to have been willing to assign the invention to the partnership. The reason assigned for not carrying this purpose into effect is that some complication arose with reference to

the formation of a corporation for the promotion of the invention, wherein, as it is alleged, the appellee was called upon to surrender the controlling interest in the business vested in him by the contract between him and the appellant. But we fail to see how any such subsequently accruing complication should be permitted to operate to discharge the appellee from the legal and equitable obligations of his contract.

Whether the appellee was in fact the inventor of the improvement which he claims to have made, we do not decide. But we think that, if he did make that invention, he made it as the agent and partner of the appellant, for the benefit of their partnership under the contract. We think, therefore, that the appellant, and not the appellee, is entitled to have letters patent granted to him for the invention.

The decision of the Commissioner of Patents *will be reversed; and a certificate of the proceedings in this court and of this decision will be returned to the Commissioner, to be entered of record in the Patent Office, according to law.*

On January 20, 1896, *Mr. Bailey*, on behalf of the appellant, filed a motion for a hearing.

On February 12, 1896, the motion was overruled, Mr. Justice MORRIS delivering the opinion of the Court:

A petition for rehearing has been filed in this cause by the appellee, Kingsley. The ground of the petition is that the court had no jurisdiction of any question other than that of priority of invention; and yet, that, instead of deciding that question, it held that the appellant, Milton, was entitled to the patent on account of the relations existing between him and the appellee.

We think the appellee has misapprehended the scope of the decision and the scope of the jurisdiction of this court in the premises.

The law creating this court provided that "any party aggrieved by a decision of the Commissioner of Patents *in any interference case* may appeal therefrom" to this court.   But the act does not define what is an "interference case;" nor apparently does any other statute define it with precision. But the term *interference* is one well known in the patent law ; and its meaning is not to be misunderstood.   It is defined by the authorities to be "the act or state of claiming a right to the same invention," Webster's Dictionary, word *Interference ;* Robinson's Law of Patents, sec. 587.

Section 4904 of the Revised Statutes, which embraces the general law upon the subject of interferences, provides :

" Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be, and shall direct the primary examiner to proceed to determine the question of priority of invention.   And the Commissioner may issue a patent to the party who is adjudged the prior inventor, unless the adverse party appeals from the decision of the primary examiner, or of the board of examiners in chief, as the case may be, within such time, not less than twenty days, as the Commissioner shall prescribe."

And now, under the act creating this court, another appeal is provided.

This section of the statutes, it will be noticed, speaks of " priority of invention " and " the prior inventor ;" but it is very plain from the practice of the Patent Office, and from the cases that are brought here, and from the numerous cases to be found in the books, that these expressions are not used in their proper sense with reference to two or more independent *bona fide* inventors.   For they are entirely appropriate only when they apply to independent inventors. If one man has appropriated the invention of another and claims it as his own, there can properly be no question of priority of invention or of prior inventor.  . There is but one

invention and one inventor ; and the other is simply a claimant without right. Yet it is not to be supposed that the rival claims of such parties do not constitute a proper subject for interference proceedings in the Patent Office. The records of the Patent Office are full of such cases ; but the statute does not specify them, for the reason that *prima facie* each claimant is to be presumed an inventor, and therefore to be recognized as a contestant on the question of priority of invention. Assuredly it does not follow, that, when in interference proceedings a claim *prima facie* entitled to be considered on its merits is found to be wholly baseless, we must still regard the claimant as an inventor and his opponent as the prior inventor. There is only one inventor in such case ; and, in the proper sense, there can be no question whatever of priority.

So, in the present case, in view of the circumstances of the case, we have held that the appellee, in what he did, acted merely as the agent of the appellant, that he was employed by the appellant to elaborate his (the appellant's) invention, and that, under well settled rules of law, any improvement in the invention so made by him belonged to the appellant.

We declined to go into the question of priority of invention with reference to the testimony, to determine whether the appellant had actually conceived the idea of the improvement or invention in controversy and communicated it to the appellee to be reduced to practice by him, or whether the improvement was in fact devised by the appellee. We did not deem it necessary to determine that question. What we did determine was that the appellee invented nothing in the sense of the law, and that whatever he did in the premises belonged to the appellant, and was, in contemplation of law, not his act, but the act of the appellant. We do not deem it necessary in such a case to adjudge in formal terms that the appellant is the prior inventor, when we have adjudged him to be in law the only inventor.

The petition for a rehearing must, therefore, be *denied.*