# GEDGE v. CROMWELL.

---

PATENTS; INTERFERENCE; MASTER AND SERVANT; EVIDENCE.

1. A junior party to an interference, whose adversary holds a patent for the disputed invention, has the burden of proof to show beyond a reasonable doubt that he is the first and original inventor, and this burden would seem to be increased when he comes to this court with two decisions of the Patent Office adverse to him.

2. One who, by way of partnership, or contract, or otherwise, empowers another person to make experiments upon his own conception for the purpose of perfecting it in its details, is entitled to the ownership of such improvements in the conception as may be suggested by such other person; *following* Milton v. Kingsley, 7 App. D. C. 531; and this rule is not to be regarded as contravened by the liberal policy of the Patent Office in the allowance of independent patents for minute improvements, independent inventors not coming within the scope of the rule.

3. Where C.'s partnership firm by contract agreed to make improvements upon G.'s patented reel, and it appears that G. made disclosures to a member of the firm other than C., and C. was subsequently granted a patent for the improvements and was put in interference with G., it was *held*, (1) that it was incumbent upon C. to show beyond a reasonable doubt that what he did was his own invention and not that of G., and (2) that it was not necessary for G. to show that he made the disclosures to C. personally, since the latter was chargeable with notice to his firm.

No. 181.  Patent Appeals.  Submitted November 14, 190!.  Decided January 7, 1902.

HEARING on an appeal from a decision of the acting Commissioner of Patents, in an interference case.      *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. George B. Parkinson* and *Mr. Brayton G. Richards* (*Mr. Horace A. Dodge* being with them on the brief) for the appellant.

*Mr. Thomas W. Blakewell, Mr. Clarence P. Byrnes* and *Mr. Philip Mauro* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the acting Commissioner of Patents in an interference case, wherein the subject-matter of controversy is the right of priority of invention in an improvement in rod-reels. The subject of invention is thus stated by the Patent Office:

1. A rod-reel having a friction-wheel secured to the driven shaft, a vertically-movable friction-ring having the same axis as and arranged to connect with and be driven by the said wheel, hook-shaped fingers arranged to receive the rod, and connections between the fingers and the friction-ring arranged to move them in and out upon its vertical movement.

2. A rod-reel having a friction-wheel secured to a driven shaft, a vertically-movable friction-drum arranged to contact with the friction-wheel and be driven thereby, a friction brake-wheel arranged to contact with the friction-drum and raise and lower it, and means for moving the brake-wheel vertically.

3. A rod-reel having a series of outwardly-movable hook-fingers, a brake arranged to stop the rotation of the reel, and actuating connections between the brake and the hook-fingers arranged to retract the hook-fingers whenever the brake is applied.

For this invention the appellee, John C. Cromwell, holds a patent which was issued to him on November 7, 1899, based upon an application which he had filed on November 24, 1898. The appellant, Burton H. Gedge, did not file his application until April 25, 1900, after information had reached him of the issue of the patent to Cromwell. He then copied in his application the claims of the patent, and with his application filed a request to be placed in interference with Cromwell. Accordingly the present interference was declared.

In his preliminary statement the appellee, Cromwell, alleged that he had conceived the invention on or about July

13

20, 1897; disclosed it to others on or about July 24, 1897; made drawings of it on the last-mentioned day, and continued from time to time thereafter to make such drawings; on or about January 14, 1898, constructed and completed a full-sized rod-reel in accordance with the invention, which rod-reel was put into successful operation about February 5, 1898; and thereafter made and put into successful operation several other reels embodying the same invention.

The appellant, Gedge, in his preliminary statement alleged that he had conceived the invention set forth in the second count or issue of the declaration of interference before January 1, 1891; that prior to said date he had made sketches thereof and disclosed the same to others; that prior to June 1, 1896, he had conceived and disclosed the inventions set forth in the first and third counts or issues of the declaration of interference; that prior to April 20, 1897, he had disclosed said inventions to William Garrett, of Cleveland, Ohio, and illustrated them by sketches; that, on or about April 26, 1897, he had entered into a contract with the Garrett-Cromwell Engineering Company, of Cleveland, Ohio, a partnership consisting of said William Garrett and John C. Cromwell, the senior party to this interference, by which contract the said company undertook, upon terms therein specified, to enter upon the manufacture and sale of wire-rod reels, embodying the invention described and claimed in letters-patent issued to the appellant on September 1, 1891, for a machine for coiling wire rods, to perfect said machine in its details, and to introduce it into all rod-mills which the said Garrett-Cromwell Engineering Company should have a chance to build; that on or about May 12, 1898, he had authorized the said Garrett-Cromwell Engineering Company to contract with the Oliver Wire Company, of Pittsburg, Pa., for installing in the factory of this latter six wire-rod reels, made in accordance with the said letters-patent and improvements thereon; that, on or about the same day (May 12, 1898), he had been informed by said Garrett-Cromwell Engineering Company that the contract with said Oliver Wire Company had been closed; that thereupon, at the request of said Garrett, he had

sent to the Garrett-Cromwell Engineering Company a drawing embodying all the inventions recited in the declaration of interference; that under said contract the said Garrett-Cromwell Engineering Company had proceeded to construct full-sized machines, embodying not only the invention set forth in the letters-patent of September 1, 1891, but also the improvements stated in the issues of the declaration of interference and disclosed in the drawings sent to that company by the appellant; that these mills had gone into operation some time between July 1, 1898, and August 15, 1898; that the appellant himself had seen these rod-reels in successful operation in the Oliver Wire Company's establishment on or about October 1, 1898; that they embodied the inventions in interference; and that the appellant had been informed and believed that since that time the Garrett-Cromwell Engineering Company had manufactured and sold similar rod-reels in large numbers.

In support of their respective allegations the parties took testimony, of which a large part was documentary, consisting of correspondence between the appellant, on the one side, and the Garrett-Cromwell Engineering Company, William Garrett, and John C. Cromwell, on the other, during the period from April 15, 1897, to January 12, 1898. Upon this testimony the examiner of interferences in the Patent Office held that the appellant, Gedge, was entitled to judgment of priority of invention; or rather he held that the case presented a question of originality rather than of priority of invention, and that Cromwell had derived the invention from Gedge. The board of examiners-in-chief reversed this decision, and found in favor of Cromwell; and the assistant Commissioner of Patents, who sat in the place of the Commissioner, affirmed the decision of the board. From the decision of the acting Commissioner the case now comes here on appeal.

The appellant has the burden of proof upon him, both as the junior applicant, and as against an adversary holding a patent for the disputed invention, to show beyond a reasonable doubt that he is the first and original inventor of the

matter in controversy; and the burden would seem to be increased in this court by the fact that he comes here with two decisions of the Patent Office adverse to him. And yet, notwithstanding all this, we have no hesitation in holding that he was the first and only inventor in this case, and that the examiner of interferences in the Patent Office was right in awarding to him judgment of priority of invention.

It is unnecessary for us to analyze the testimony at any length. This has been done very fully and very fairly by all three of the tribunals of the Patent Office; and their analysis is contained in the record. A fourth abstract would serve no useful purpose, especially inasmuch as we rest our decision on a few salient facts, in reference to which there is no controversy.

It is conceded, and it could not well have been denied, that the invention here in controversy, and for which the appellee has a patent, is no more than an improved form of the invention covered by the previous patent issued to the appellant in 1891. It is conceded, or at least there can be no reasonable doubt whatever of the fact, that, if the appellee made the improved invention here in controversy, as he claims to have made it, on and after July 20, 1897, the inducement to him to make it was the contract entered into by the appellant with the appellee's company nearly three months before that time, on April 26, 1897. That contract was not formally reduced to writing; but the evidence of it is in writing, and is to be found in the correspondence on and before the last-mentioned date between the appellant and the Garrett-Cromwell Engineering Company.

In this correspondence it was repeatedly urged upon the appellant by the Garrett-Cromwell Engineering Company, as an inducement to the appellant to accept the division of profits proposed by the company, that the company would " take hold," as the expression was, of this reel, would " *perfect it in some of its details,*" and would introduce it into every rod-mill which the company would have a chance to build; and further, that, because the reels, as they were then working at Anderson, Ind., where they were first introduced,

would " have to be entirely remodeled, and new drawings and new designs in every detail would have to be made, which would entail a great trouble and expense " upon the company, therefore the offer made by the company of an equal division of the profits was a fair one. And the contract between the parties was upon these precise terms. It was conceded that the Gedge reels, as then in operation, were somewhat imperfect; and it was part of the contract that the Garret-Cromwell Engineering Company should seek by experiment to remove the difficulties and to remedy the imperfections, and so to improve the operative character of the machine as to obviate the existing objections thereto. This experimentation it was the special province of the appellee Cromwell to make, because he was the expert and the mechanical engineer of the partnership, and his partner Garrett had the charge only of the business and financial operations of the firm.

By virtue of this contract, therefore, Cromwell, the appellee, undertook, and engaged himself to the appellant, technically for the benefit of the appellant and financially for the equal benefit of the appellant and the appellee's firm, to " remodel " the appellant's reel, and to perfect it in its details. It is claimed on the one side and denied on the other, that the appellant furnished suggestions and sketches for such improvements. This, of course, if proved, would be important; but we do not regard the fact as necessary for the determination of the case. The conceded fact is that the appellee, Cromwell, by the contract which has been stated, undertook, in subordination to Gedge and for the benefit of the latter's invention, to make improvements on that invention and to perfect it in its details. Now, it is difficult to conceive a situation in which the principle of the decision of the Supreme Court of the United States in the case of *Agawam Company* v. *Jordan*, (7 Wall. 583, 602,) would be more appropriate than in that which is here disclosed. There the court said:

" No one is entitled to a patent for that which he did not invent unless he can show a legal title thereto from the inventor or by operation of law; but where a person has discovered an improved principle in a machine, manufacture,

or composition of matter, and employs other persons to assist him in carrying out that principle, and they, in the course of the experiments arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general to be regarded as the property of the party who discovered the original improved principle, and may be 'embodied in his patent as part of his invention."

Such also was the holding of this court in the much misunderstood case of *Milton* v. *Kingsley,* (7 App. D. C. 531, 537,) in which, upon the authority of the case of *Agawam Co.* v. *Jordan* and Curtis on Patents, we said:

" We regard it as well-settled law that, when one, who has conceived the principle or plan of an invention, employs another to perfect the details, and to realize his conception, and the employee devises new and valuable improvements in the original conception or invention, the improvements belong to the employer and not to the employee."

The question is not one of partnership, or of general fiduciary relationship — for there may be partnership and fiduciary relationship for one purpose and not for another; but it is one of fiduciary employment in the special subject-matter of invention. The rule is that one, who, by way of partnership or contract, or in any other, empowers another person to make experiments upon his own conception for the purpose of perfecting it in its details, is entitled to the ownership of such improvements in the conception as may be suggested by such other person. And we do not understand that the exceedingly liberal policy of the Patent Office in the allowance of independent patents for minute improvements is to be regarded as contravening this rule. Independent inventors may not come within the scope of the rule.

It is very clear to us, therefore, under the circumstances of this case, that, if the appellee originated and devised the alleged improvements made by him upon the conception of the appellant, and did not receive them from the communications of the appellant to him or to his partner, Garrett, which it would not be unreasonable to assume as the fact, yet

his improvements, under what we must regard as the settled principle of the law, must be held to inure to the benefit of the appellant. And this conclusion is greatly strengthened by the course of conduct of the appellee himself.

The alleged conception of the invention by the appellee was of the date of July 20, 1897. There is an apparent vacuum about this time, from June 22, 1897, to May 2, 1898, in the correspondence between Gedge and the Garrett-Cromwell Engineering Company, as given in the record, due possibly to the fact that Garrett, the senior partner of this company, was absent in Europe from about the beginning of August, 1897, to the latter part of April, 1898. But soon after this last-mentioned date the correspondence, if it had been interrupted, was resumed, and was continued with much regularity until January 12, 1899. Yet not once during all this time, notwithstanding that the so-called Gedge reels were put into the Oliver Company Mills in Pittsburg, and apparently also into mills in Kentucky and Alabama, and that Gedge had been repeatedly called on by the Garrett-Cromwell Engineering Company to send needed materials for them, and in the correspondence the reels were always designated as Gedge reels, not once did Cromwell assert any right of his own in the premises, or claim to have made any invention independent of that of Gedge; and never once was there any intimation of any kind by either partner of the Garrett-Cromwell Engineering Company to Gedge that the appellee Cromwell had invented anything of his own, or was working upon any such invention. Cromwell's application for a patent was filed on November 24, 1898. Gedge had quite recently written several letters to the company soliciting information, which appears to have been withheld from him, relative to the mills into which his reel had been introduced by the company. Under date of the very next day, November 25, 1897, the appellee, Cromwell, for the Garrett-Cromwell Engineering Company, wrote to him this letter:

"DEAR SIR: Your favor of the 23d inst. received. Our Mr. Garrett, who has been personally attending to the reel

matter, is confined to his bed with something like an attack
of pneumonia.   We will lay your letter before him for reply .
as soon as he is able to attend to business again.

Yours truly,

(Signed)

GARRETT-CROMWELL ENGINEERING COMPANY.

By J. C. CROMWELL, per J. S."

The writer of this letter was remarkably silent as to the
fact that he was at that very time claiming in the Patent
Office what he knew that Gedge also claimed, and which was
the same construction that had been put into the Oliver mills
as Gedge's invention.   It may be that this silence was not
intended as a fraudulent attempt to defeat the rights of the
appellant; but under the circumstances it was not good faith.

Gedge was again compelled to write for information on
December 16, 1898; and finally, under date of January 6,
1899, the Garrett-Cromwell Engineering Company, by Wil-
liam Garrett, the senior partner, addressed a letter to him
in which that company for the first time repudiated his rights,
and refused further to recognize him in the matter.   The
statements contained in this letter are in more than one in-
stance in direct antagonism to statements previously made
by the company in the course of the correspondence; and
contain no sufficient excuse for their violation of their agree-
ment.

Cromwell, of course, was bound by the action of his firm
in the premises.   It is very plain that he was not only charge-
able with constructive notice, through his partnership rela-
tion with Garrett, of all that was done, but that he had actual
knowledge of all the proceedings and participated in them.
The suggestion in argument that he and Garrett were part-
ners for the purpose of the construction of reels and other
similar devices, and not for the purpose of making or per-
fecting inventions, does not require serious consideration.
The contract between his company and Gedge distinctly and

specifically provided that his company, and therefore necessarily that he, as the engineer member of it, would remodel the machine and perfect the invention in its details; and it was not competent for him, either in morals or in law, thereafter to claim as his own what he had undertaken to do for another. The patent law does not require that one, who contracts to experiment on the conception of another and to devise improvements upon it, should be regarded as an independent and original inventor.

The appellant Gedge claims that he communicated to Garrett his conception and sketches of all the devices now in controversy; and we think that the proof sustains his claim. Under the circumstances it would be unnecessary to show by actual proof that Garrett communicated these to Cromwell; for Cromwell would be chargeable with notice of them. But whether Cromwell had knowledge of them or not, or even if the testimony leaves it doubtful whether there was any such communication to Garrett, it was incumbent upon Cromwell, in view of the relations of his firm to Gedge, to show beyond a reasonable doubt that what he did was his own invention and not that of the appellant. This he has not done.

We are of the opinion that it was error in the acting Commissioner to determine the issues in favor of the appellee; and we are of opinion that the appellant, Burton H. Gedge, is entitled to judgment of priority of invention. The decision of the acting Commissioner will therefore be *reversed.*

*The clerk of the court will certify this opinion, and the proceedings in the cause in this court, to the Commissioner of Patents according to law.*