**POLAROID CORPORATION and William A. Shurcliff, Plaintiffs,**

v.

**Charles R. HORNER and William F. Gray, Defendants.**

**Civ. A. No. 3005–59.**

United States District Court
District of Columbia.
Sept. 28, 1961.

Donald L. Brown, Cambridge, Mass., John H. Esquirol, Jr., Westport, Conn., John J. Sexton (Arent, Fox, Kintner, Plotkin & Kahn), Washington, D. C., for plaintiffs.

Michael W. Werth, H. L. Godfrey, Dept. of Justice, Ellen Lee Park, Asst. U. S. Atty., Washington, D. C., for defendants.

McGARRAGHY, District Judge.

This is an action under Section 146, 35 U.S.Code, in which plaintiffs Polaroid Corporation, as assignee, and William A. Shurcliff, as assignor, seek a judgment that Shurcliff was the first, original and sole inventor of the subject matter defined in Counts 1 to 6, inclusive, of an interference proceeding before the United States Patent Office; and that Polaroid is entitled to receive Letters Patent of the United States for said invention.

The invention in question relates to a radiation detection unit or dosimeter.

On May 13, 1952, Shurcliff filed an application for patent on a radiation detecting device or dosimeter. The application received Serial No. 287,535 and on January 10, 1956, a patent, No. 2,730,625 was issued to Polaroid as assignee of Shurcliff. Counts 3 and 4 of the interference correspond to claims in this patent.

On August 18, 1952, defendants Charles R. Horner and William F. Gray filed an application for patent on certain radiation detecting devices. This application received Serial No. 305,098. The remaining counts in interference, counts 1, 2, 5 and 6, originated as claims in this application.

On October 21, 1952, Shurcliff filed an application for patent on certain radiation detecting devices. This application received Serial No. 315,966.

Shurcliff on May 9, 1952 assigned to Polaroid all right, title and interest in and to Application Serial No. 287,535, and to the invention disclosed therein; and on October 16, 1952, he further assigned to Polaroid all right, title and interest in and to Application Serial No. 315,966, and to the invention disclosed therein.

On January 17, 1956, an interference was declared between applications Serial Nos. 305,098 and 315,966 and identified as Interference No. 87,809.

On June 5, 1956, Shurcliff filed an application for the reissue of patent No.

2,730,625 with consent of and on behalf of Polaroid. The reissue application received Serial No. 589,361. The interference was redeclared between the Horner and Gray application and Shurcliff reissue application Serial No. 589,361. Shurcliff was accorded the filing date of his first application—May 13, 1952—and was, therefore, the senior party before the Board of Patent Interferences.

Both parties took testimony, filed briefs and appeared at the final hearing before the Board. On the basis of the evidence submitted to it, the Board of Patent Interferences ruled that Horner and Gray should prevail as to all counts and awarded priority of invention to them. Shurcliff filed a motion to reopen the record and a petition for reconsideration. The Board considered the petition but declined to modify its previous decision. Being dissatisfied with the decision of the Board of Patent Interferences, the plaintiffs brought this action.

Prior to the summer of 1950, Doctor James H. Schulman of the Naval Research Laboratory and others discovered that radiation could change the luminescent properties in silver phosphate glass. He proposed to the Bureau of Ships of the Department of the Navy that this be made the basis of a system of radiation dosimetry. Various tests had been run on this glass and Dr. Schulman had determined that a phosphate glass containing 8% by weight of silver phosphate would be the best type glass to use. It was further recognized that some type "reader" would have to be used in conjunction with the phosphor glass dosimeter. The discoverers were aware that the phosphate glass would be energy dependent and, prior to the fall of 1950, the exact quantitative degree of energy dependence was determined by Mr. Raymond Alger of the Naval Radiological Defense Laboratory. It was common knowledge at this time that energy-dependence could be reduced by lead shielding.

By March 15, 1950, the Navy Department knew that a phosphate glass dosimeter could be made and that it could be made substantially non-energy dependent by the use of suitable shielding and, on that date, the Department issued a military specification for a "Radiacmeter-Phosphor Glass Dosimeter". Military Specification, MIL–R–15239 (SHIPS), 15 March 1950.

The specification required, among other things, that the work done under it be carried out in two phases. The first phase was to be a study to determine the suitability of phosphate glass detector materials for meeting the requirements of the specification and the second phase required the design and development of a radiacmeter. It was further specified that the radiacmeter would be both a self indicating and an indirect reading device and that it should include: (1) a phosphor glass detector, (2) color matching scale; (3) an ultraviolet light source; and (4) a photometer. The detector was to be made from non-critical materials and was to "be packaged in a pocket watch size water proof container * *. It is desirable that the overall dimensions of this container be not greater than 1¾ inches in diameter by ½ inch wide." Military Specification, MIL–R–15239 (SHIPS), 15 March 1950, par. 3.7.1.

During the summer of 1950, Polaroid Corporation, the present plaintiff, was awarded a contract by the United States Government under the aforementioned specification. At the time of the award of the contract and at all times thereafter pertinent to the decision of this case, Shurcliff was employed as a physicist by Polaroid and was that company's project leader for the dosimeter project. Shurcliff has a doctorate in physics and had extensive experience in the field of radiation and dosimetry. Horner and Gray, during the pertinent period, were employees of the Government in the Radiac Section of the Bureau of Ships, Department of the Navy, and were working under Adolph F. Lovoff, head of the Radiac Section. This section was responsible for the development of the Navy dosimeter program.

Horner was a project officer in the Radiac Section charged with administrative and technical responsibility for the

development of the dosimeter concerned. He also had extensive experience in the field of dosimetry. Gray was under Lovoff's direction and was project engineer for the Radiac Section's dosimeter program. Gray had extensive contact with the field of personnel dosimeters for about two years prior to the time the contract was awarded to Polaroid.

The period through September 1950 was primarily educational for Polaroid and included indoctrination by the Navy Department, visiting installations and talking with people who had been on the Navy program, as well as getting acquainted with outside manufacturers. There was also during this period and through the winter of 1950 an interchange of ideas regarding the dosimeter project between Polaroid personnel and personnel of the Radiac Section of the Navy.

In December of 1950 and January of 1951, Polaroid submitted to the Radiac Section of the Navy Department five dosimeter cases. However, none of these cases was considered satisfactory. The manufacture of a satisfactory personnel dosimeter was considered to be a crash project by the Radiac Section inasmuch as these dosimeters were to be used under actual conditions in a series of tests scheduled in Nevada in the middle of 1951. Lovoff became concerned about Polaroid's failure to produce a satisfactory dosimeter and sometime in January, 1951, he instructed Horner and Gray to design a dosimeter case. They did design a case which was acceptable to Lovoff and presented it to him on February 1, 1951. Thereafter there were further meetings between representatives of Polaroid, including the plaintiff Shurcliff, and representatives of the Radiac Section of the Navy Department's Bureau of Ships, including Horner and Gray. Sometime in March of that year, Polaroid produced a dosimeter which was approved by the Radiac Section of the Department of the Navy. The counts in interference stem from the development and production of this dosimeter and both parties rely on this dosimeter for

their reduction to practice. The issue presented in this action, therefore, is one of originality.

The Board of Patent Interferences, after considering the complex factual situation before it, awarded priority of the subject matter in issue to Horner and Gray. The Board of Patent Interferences reasoned that the dosimeter was quite clearly outlined in the Military Specification which the Board had as an exhibit before it and that said specification left "little to be supplied beyond mechanical details and the determination of optima in known relationships." Board of Patent Interferences Decision, Paper No. 75, Patent Interference No. 87,809, p. 3 (1959). The Board further concluded that the principles of the employer-employee relation as found in the case of Agawam Woolen Company v. Jordan, 1868, 7 Wall. 583, 74 U.S. 583, 19 L.Ed. 177 and subsequent cases applied to the interference (Decision, supra, at 5) and that the Government contract put "Polaroid and therefore its employees, in the role of skilled helper and assistant, for which it was paid according to what it agreed." Decision, supra, at 8.

At this point in the proceedings only the military specification of the contract under which the dosimeter was constructed was before the Board of Patent Interferences. The entire contract had not been offered in evidence. Shurcliff, contending that he was an independent contractor under the provisions of the contract, and that he was therefore, not within the decision of Agawam Woolen Company v. Jordan, supra, and the cases following it, moved to have the record before the Board of Interference Examiners reopened so that the entire contract could be received. At the same time, Shurcliff petitioned for reconsideration. The Board denied Shurcliff's motion to reopen, stating that the "fact of the contractual relation was quite apparent from the testimony of witnesses for both parties. We have perused the offered document without noting anything in it which changes the picture we had of it from the testimony. It would not there-

fore alter our opinion in the case." Reconsideration, Paper No. 79, Patent Interference No. 87,809, p. 2 (1959). The Board also denied the petition for modification of its original decision. Reconsideration, supra, at 3. The plaintiffs then brought this action.

In this proceeding, plaintiffs claim that the invention disclosed by the Shurcliff application was conceived and reduced to practice by Shurcliff prior to any such action on the part of Horner and Gray; that the decision by the Board of Patent Interferences insofar as it was predicated upon an employer-employee relationship was in conflict with the June 30, 1950 contract; that the contract was improperly excluded by the Board of Patent Interferences; that Horner and Gray had failed to establish they were the first to conceive the invention of the counts in interference; and that the defendants failed to establish disclosure of the invention to Shurcliff or to Polaroid or to Shurcliff's associates in Polaroid.

The defendants deny the priority claimed by plaintiffs and claim that they, on behalf of the Government, were the first to conceive the invention described by the counts in interference and that they then disclosed it to plaintiffs. Defendants claim that the invention of the counts in issue was reduced to practice by Polaroid on behalf of the Government and Horner and Gray and that priority of invention should be awarded to them.

The case is before the Court on review of the record before the Board of Interference Examiners and all evidence before that Board was presented to the Court. No oral testimony was presented by either party. Both parties filed briefs and presented oral argument. The only evidence offered and admitted by the Court which was not in evidence before the Board, was the contract of June 30, 1950 under which Polaroid was awarded the phosphor glass dosimeter contract.

■ An action under 35 U.S.C. § 146 contesting a decision of the Patent Office which has decided a question of priority is tried *de novo* in the District Court.

United States v. Szuecs, 1957, 100 U.S. App.D.C. 24, 240 F.2d 886, 887. In such an action further evidence may be received which strengthens contentions already fully made and supported by testimony before the Patent Office where there has been no suppression, bad faith or gross negligence on the part of the party offering it. Minnesota Mining & Manufacturing Co. v. General Electric Co., D.C.1958, 167 F.Supp. 37. In this action, the Court admitted in evidence the June 30, 1950 contract between Polaroid and the United States Government since testimony regarding that contract had been before the Board of Interference Examiners and there was no showing of suppression, bad faith or gross negligence on the part of the plaintiffs here in failing to offer the contract in evidence before said Board. In fact, the evidence affirmatively shows that Shurcliff attempted to have the Board consider the contract but the offer was there denied. However, as hereinafter indicated, the Court is of the opinion that the contract does not strengthen the plaintiffs' contentions.

■ The plaintiffs claim that defendants failed to establish that they were the first to conceive the invention of the counts in interference and that they also failed to establish the requisite disclosure. The Board of Patent Interferences has awarded priority of the counts in interference to the defendants. Such decision cannot be overturned by the Court "unless the contrary is established by testimony which in character and amount carries thorough conviction." Morgan v. Daniels, 1894, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657. The record establishes that in January of 1951, Mr. Lovoff, head of the section responsible for the development of the Navy dosimeter program, became concerned with the inability of Polaroid to produce a satisfactory dosimeter; and, in that same month, he instructed Horner and Gray to design a dosimeter case. Horner and Gray did present to Lovoff a drawing of a dosimeter acceptable to him on February 1, 1951. During the entire period

of the dosimeter project there was a continuing interchange of information between the Navy organizations involved in the contract and Polaroid; and, further, it was the practice of the contracting personnel to submit as soon as possible to contracting corporations any ideas associated with the subject matter of the contract. There was a meeting held on February 16, 1951 in Washington, D. C. attended by Horner and Gray and Shurcliff, among others, at which the glass dosimeter program was discussed and at which, according to the government witnesses, the Horner and Gray design would have been discussed and at which, according to both Horner and Gray, the design was shown. Up until this time plaintiffs had not presented an acceptable dosimeter to the government. Another meeting was held on February 26, 1951, attended by Shurcliff and Horner, among others. Thereafter Shurcliff sketched a design of a dosimeter, which was very similar to defendants' February 1, 1951 design.

▮▮ Shurcliff testified that defendants' design was never shown to him and one of the plaintiff's witnesses stated that he had no recollection of the disclosure by the defendants of their design. This witness stated further, however, that he was sure many drawings were made at the various conferences. Considering all of the testimony on both sides of the issue and recognizing that the Court must consider the record as a whole, Buffington v. Blair, 1941, 121 F.2d 635, 28 CCPA 1382, "it is enough to say that the testimony as a whole is not of a character or sufficient to produce a clear conviction that the patent office made a mistake in awarding priority of invention to the defendant; * * *." Morgan v. Daniels, supra, 153 U.S. at page 129, 14 S.Ct. at page 775.

▮ Plaintiffs further contend that the Board of Patent Interferences should not have applied the employer-employee theory to this case since Polaroid is an independent contractor and was not an employee of the United States Government. The point was first raised by the Board of Patent Interferences. However, the Board did not state that there was in fact an employer-employee relationship in the strict agency sense; but rather that, based on the peculiar facts in this case, "the principles of what is known as the employer-employee relation apply to the case." Decision, supra, at 5. The Board then discussed Agawam Woolen Company v. Jordan, supra, and the line of cases following. To further clarify its statement, the Board said "The employer or employee, or both, may be corporations, and the principles of the employer-employee relationship * * * will still apply if the conditions imposed by the doctrine are shown to exist." Decision, supra, at 6.

The Board applied the principles of the employer-employee relationship to the case after considering all of the facts before it. The Board found that the parties and the individuals were brought together under a contract which as it was worded contemplated that Polaroid should give the Navy the benefit of its skill and facilities in helping the Navy to perfect a radiation dosimeter. The Board further found that the dosimeter contracted for was quite clearly outlined in the contract's Military Specification which left little to be supplied beyond mechanical details and the determination of optima in known relationships. The Board found further that the Government retained authority of decision at every point and that the individuals involved had many conferences wherein all aspects of the devices sought to be perfected were freely and extensively discussed. The Board stated that the key to what was actually sought by the Military Specification of the contract over that which was then known was the production of an equipment which would comply with the Military Specification in the contract and which could be manufactured at low cost by mass production methods. And further that Horner and Gray sketched and described in writing a two part plastic enclosure, prior to any conception on the plaintiffs' part, the enclosure parts of which were nearly iden-

tical with the corresponding parts in the patent application drawings of plaintiffs and of Horner and Gray.

Limiting this decision to the peculiar facts of this case and rendering no decision as to the interpretation of Government research and development contracts generally, the Court agrees with the conclusion of the Board and is of the opinion that the rule of patent law stated in Agawam Woolen Company v. Jordan, supra, is applicable. See also Milton v. Kingsley, 1896, 7 App.D.C. 531. As was stated in Gedge v. Cromwell, 1902, 19 App.D.C. 192:

> "By virtue of this contract, * * Cromwell * * * undertook, and engaged himself. to the appellant, technically for the benefit of the appellant * * *. [I]t is difficult to conceive a situation in which the principle of the decision of the Supreme Court of the United States in the case of Agawam [Woolen] Company v. Jordan * * * would be more appropriate than in that which is here disclosed."

And the Court continued further, referring to its decision in Milton v. Kingsley, supra:

> "The question is not one of partnership or of general fiduciary relationship—for there may be partnership and fiduciary relationship for one purpose and not for another; but it is one of fiduciary employment in the special subject-matter of invention. The rule is that one, who, by way of partnership or contract, or in any other, empowers another person to make experiments upon his own conception for the purpose of perfecting it in its details, is entitled to the ownership of such improvements in the conception as may be suggested by such other person.

> "[U]nder the circumstances of this case * * * if [Cromwell] * * * originated and devised the alleged improvements made by him upon the conception of the appellant * * * his improvements, under

what we must regard as the settled principle of the law, must be held to inure to the benefit of the appellant."

The Board of Patent Interferences found that under the contract a general plan was unfolding under the direction of Horner and Gray and that the contributions of Shurcliff to this plan were ancillary to it and not inventive contributions. It is the opinion of the Court that the plaintiffs have not shown "by testimony which in character and amount carries thorough conviction" Morgan v. Daniels, supra, that the conclusion of the Board of Patent Interferences was erroneous.

Accordingly, judgment will be entered for the defendants. This Opinion will constitute the Court's findings of fact and conclusions of law. Counsel for defendants will submit proposed judgment consistent with the foregoing.