**MONSANTO COMPANY, Jules Pinsky, Albert E. Adakonis and Alvin R. Nielsen, Plaintiffs,**

v.

**Ernst KAMP, Karl Jahn and Edward J. Brenner, Commissioner of Patents, Defendants.**

**Civ. A. No. 2372–64.**

United States District Court
District of Columbia.

June 15, 1967.

Wayne L. Benedict, Herbert B. Roberts, and Platon Mandros, Washington, D. C., for plaintiffs.

Paul M. Craig, Jr. and Donald Antonelli, Washington, D. C., for defendants Kamp and Jahn.

Joseph Schimmel, Solicitor, Washington, D. C., for defendant Brenner.

## OPINION

HOLTZOFF, District Judge.

This is an action under 35 U.S.C. § 146, to set aside a determination by the Patent Office, in an interference proceeding, awarding to the defendants Kamp and Jahn, rights of priority to a patent. At this time the case was before this Court on a separate trial as to one of the issues.

The invention involved in this controversy relates to plastic bottles, such as are used for pharmaceutical products. Specifically it consists of coating or lining bottles of this type with a resin compound to prevent the loss of liquid contents by permeation or evaporation. The kind of plastic used is known as polyethylene. The resin employed is known as an epoxy resin. There are two counts in the interference. Each of them covers a coated container as an article of manufacture, one of the counts being somewhat broader than the other.

The plaintiffs, Pinsky, Adakonis, and Nielsen, filed an application for a patent on March 28, 1956. Patent No. 2,830,721 was granted to them on April 15, 1958, and was eventually assigned to the plaintiff Monsanto Company.

The defendants, Kamp and Jahn, filed an application for a patent on April 17, 1956, No. 578,846. They had filed a parent application in Germany on April 22, 1955 and were accorded in the United States the benefit of that earlier date. The application submitted in the United States was claimed to be for the same invention and made in behalf of the same inventors as that previously filed in Germany.

An interference was declared between the plaintiffs' patent and the defendants' application, on March 27, 1961. That proceeding terminated on June 29, 1964 by an award of priority to the defendants, on the basis of their earlier German filing date. The plaintiffs then brought this action to set aside that decision. They contend that they are entitled to priority and, therefore, should be permitted to retain their patent and that none should issue to the defendants.

A motion was made by the plaintiffs in this Court for a preliminary injunction to restrain the Commissioner of Patents from issuing a patent to the defendants during the pendency of this action. Another Judge of this Court denied the

application. The Court of Appeals reversed his order and held that the Commissioner of Patents was without authority to issue a patent to the defendants until the final outcome of this suit, in effect, staying the issuance of a patent in the meantime, Monsanto Co. v. Kamp, 123 U.S.App.D.C. 365, 360 F.2d 499.

On the plaintiffs' motion this Court ordered a separate trial of the issue whether defendants, Kamp and Jahn, were entitled to rely on the German application as joint inventors. It was urged by plaintiffs' counsel that if they prevailed on this point, they would be entitled to final judgment in their favor, without a trial of the remaining questions. This trial has been had. Its scope has been somewhat broader than the narrow issue defined by the order of this Court as will appear hereafter. This opinion deals with the issues that were the subject matter of the separate trial.

■ At the outset, it seems appropriate to recapitulate the principles that govern the scope of judicial review in this instance. Actions in the District Court under 35 U.S.C. § 145 against the Commissioner of Patents, to secure an adjudication that the plaintiff is entitled to a patent on an application that has been rejected by the Commissioner; and actions under 35 U.S.C. § 146, between two or more claimants to a patent, to set aside a decision of the Board of Patent Interferences on the question of priority, are *sui generis*. They are proceedings of a hybrid nature. They are sometimes denominated "trials *de novo*", but such use of this term is somewhat loose. Proceedings in this Court in actions of these two types are not true or genuine trials *de novo*. The administrative record of the Patent Office forms the nucleus of the evidence before the District Court. Unlike, however, the customary judicial review of administrative decisions where the administrative agency acts on a record, the Court does not confine itself to that record in these cases. Additional evidence is admissible in support of contentions advanced by the parties in the Patent Office. It is this feature that has led to the inaccurate use of the appellation "trials *de novo*" in these actions. There is a limitation on the admissibility of supplementary evidence. Such evidence as was available to the parties, but was withheld from the Patent Office as a result of fraud, bad faith, or gross negligence, may be excluded at the trial, Minnesota Mining & Mfg. Co. v. General Electric Co., D.C., 167 F.Supp. 37, 40; Polaroid Corp. v. Horner, D.C., 197 F. Supp. 950, 957.

■ The applicable statutes do not contain any provision authorizing the Court to remand the matter to the Patent Office for a consideration of the additional evidence tendered at the trial. In this regard Sections 145 and 146 differ from many of the recent statutes governing judicial review of administrative action. It is not unlikely that this omission is due to the fact that the original precursors of Sections 145 and 146 were enacted long before the origin and development of modern administrative law, and although the patent laws have been amended and codified subsequently, there has been no emphatic demand or pressing proposal for a change in this respect.

■ There is another significant feature in which these actions differ from true trials *de novo*. A presumption of regularity attaches to the decisions of the Patent Office. The burden is on the party challenging the administrative ruling to demonstrate that it was erroneous. This doctrine applies to interference proceedings as well as to reviews of denials of applications for patents by the Patent Office. The principle was enunciated in the leading case of Morgan v. Daniels, 153 U.S. 120, 121, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657, in the following language:

"Upon principle and authority, * * it must be laid down as a rule that where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted

as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

This doctrine has been applied in numerous cases. Among them are the following: United States v. Szuecs, 100 U.S.App.D.C. 24, 25, 240 F.2d 886, 887; Shell Development Co. v. Pure Oil Co., D.C., 111 F.Supp. 197, 201; Minnesota Mining & Mfg. Co. v. General Electric Co., D.C., 167 F.Supp. 37, 40; and Polaroid Corp v. Horner, D.C., 197 F.Supp. 950, 957.

We shall now take up the various contentions advanced by the plaintiffs as a basis for overruling the decision of the Patent Office tribunals. It is claimed, first, that defendants Kamp and Jahn, are not entitled to the benefit of the filing date of the German application, because that application was filed not by them but by Alex Kamp and Company. The oath attached to the American application, however, recites that the German application was filed in their behalf. Subsequently each of the two applicants presented an affidavit to the Patent Office to the effect that Alex Kamp and Company filed the German application in their behalf. It is a well known practice under the German patent law to prosecute applications for patents in the name of an assignee or representative of the inventor. The Patent Office of the United States in this instance accepted the showing made by the defendants, Kamp and Jahn, as sufficient to establish the fact that the German application was submitted in their behalf and that they are entitled to the benefit of its filing date.

 An application for a patent made by two or more persons claiming to be joint inventors is *prima facie* evidence that they are such. The Patent Office may act on such a representation. Lemp v. Randall, 33 App.D.C. 430, 433; Beidler v. Caps, 36 F.2d 122, 17 CCPA, Patents, 703; Brown v. Edeler, 110 F.2d 858, 861, 27 CCPA 1091; Van Otteren v. Hafner, Cust. & Pat.App., 278 F.2d 738, 741; and Cheshire v. Cox Multi-Mailer Co. (7th Cir.) 229 F. 415, 419. No reason for overturning this action of the Patent Office on the basis of its record is perceived. The burden is on the plaintiff to show affirmatively by extrinsic proof that the ruling of the Patent Office was erroneous.

 The plaintiffs introduced in evidence at the trial before this Court a Canadian patent issued on the basis of the same parent German application as supports the application in the case at bar. The Canadian application was filed on April 19, 1956 and purports to be presented solely in behalf of Ernst Kamp as the inventor. The Canadian patent was granted on June 11, 1963, to him individually and bears number 664,553. It is urged in behalf of the plaintiffs that the Canadian application constitutes a representation by Kamp that he was the sole inventor, and contradicts the assertion in the American application that Kamp and Jahn were joint inventors. This inconsistency appears on its face, but its mere presence is not sufficient to constitute adequate proof to justify a conclusion that the Patent Office erred in accepting Kamp and Jahn as joint inventors.

 The argument advanced by the plaintiffs that this conflict between the two applications shifts the burden of proof to the defendants is not well founded. The burden of proof to establish an error in the ruling of the Patent Office remains on the plaintiffs throughout, as has been already discussed. It may well be that there was an inconsistency between the American and Canadian application, or a misrepresentation in one or the other. The onus is on the plaintiffs to demonstrate which representation was incorrect. A misstatement in Canada may bear on the validity of the Canadian patent, and vice versa, S. H. Kress & Co. v. Aghnides, 4th Cir., 246 F.2d 718, 725. This Court concludes that while proof of inconsistent statements was admissible, it is

not alone sufficient to justify a reversal of the ruling of the Patent Office.

■■■■■ In this connection it should be observed that the patent law does not regard as crucial the question whether an invention is the product of several joint inventors, or of a sole inventor. A misjoinder or nonjoinder of joint inventors, does not invalidate a patent. An error in that respect may be corrected, either by the Commissioner of Patents or by the Court, by an amendment striking out or adding the name of an inventor, 35 U.S.C. §§ 116, 256.

■■■■■ The next contention of the plaintiffs is that the defendants Kamp and Jahn were not joint inventors in fact. This brings us to a consideration of the pertinent principles. A joint invention is the product of collaboration of the inventive endeavors of two or more persons working toward the same end and producing an invention by their aggregate efforts. To constitute a joint invention, it is necessary that each of the inventors work on the same subject matter and make some contribution to the inventive thought and to the final result. Each needs to perform but a part of the task if an invention emerges from all of the steps taken together. It is not necessary that the entire inventive concept should occur to each of the joint inventors, or that the two should physically work on the project together. One may take a step at one time, the other an approach at different times. One may do more of the experimental work while the other makes suggestions from time to time. The fact that each of the inventors plays a different role and that the contribution of one may not be as great as that of another, does not detract from the fact that the invention is joint, if each makes some original contribution, though partial, to the final solution of the problem.

A pertinent discussion of this subject is found in De Laski & Thropp C. W. T. Co. v. Wm. R. Thropp & Sons Co., D.C., 218 F. 458, 464, and reads as follows:

"In order to constitute two persons joint inventors, it is not necessary that exactly the same idea should have occurred to each at the same time, and that they should work out together the embodiment of that idea in a perfected machine. The conception of the entire device may be due to one, but if the other makes suggestions of practical value, which assisted in working out the main idea and making it operative, or contributes an independent part of the entire invention, which is united with the parts produced by the other and creates the whole, he is a joint inventor, even though his contribution be of comparatively minor importance and merely the application of an old idea."

The decision of the District Court in that case was affirmed by the Court of Appeals for the Third Circuit, in an opinion by Judge Woolley, who was a leading authority in this field. He stated in Wm. R. Thropp & Sons Co. v. De Laski & Thropp C. W. T. Co., 226 F. 941, 949:

"In a machine containing as many elements as this one, it is not to be thought nor by the law required, that the inventive conceptions of two inventors shall develop simultaneously. One may conceive a general or imperfect outline of an entirely novel thing, which, without the conception of another developing it and giving it body, might never amount to invention; but if the conceptions of one supplement and complement the conceptions of the other, the result might be invention and therefore joint invention."

In Vrooman v. Penhollow, 6th Cir., 179 F. 296, 308, the Court stated:

"It would constantly be happening in the case of joint inventions that the illuminating idea was seen by one before it was seen by the other. But between that and the issuing of the patent there is in many instances a long stretch of time devoted to experiments and the consideration of the form or forms in which it may best be used. The law contemplates this and gives time for it."

■ With a view to establishing affirmatively that Kamp and Jahn were not in fact joint inventors, counsel for the plaintiffs took their depositions in Germany. The depositions are lengthy. The two defendants were subjected to a thorough and searching interrogation. They had retired from active business and apparently their recollection as to some details was somewhat faded and dim. It was brought out that Alex Kamp and Company was a German manufacturer of various types of chemicals and similar products. The defendant Kamp was the principal proprietor of the business and actively managed it. The defendant Jahn was a chemist in the employ of the concern. Each of the two defendants had his own laboratory. Apparently most of the detailed experimental work was done by Jahn. Some of it, however, was conducted by Kamp. The two co-workers were in frequent consultation with each other concerning various aspects of the project. Jahn reported to Kamp from time to time concerning his laboratory operations and Kamp made suggestions to him. There was an interchange of ideas between the two, until finally a consummation was reached. Each of the two gave credit to the participation of his colleague in the development of the invention. Obviously this evidence not only fails to disprove the position of the defendants Kamp and Jahn that they were joint inventors, but on the contrary it supports their contention.

■■ Finally the plaintiffs claim that Kamp and Jahn were not in fact inventors at all, but merely borrowed and utilized the ideas of other persons. To be sure, the evidence does show that they investigated and studied the literature bearing on the subject in which they were working. This was an intelligent approach. They also visited several manufacturers of similar products, and in conferences and conversations with them, derived some useful ideas that they pursued. This evidence does not disprove the fact that the final concept and its reduction to practice, were their own invention. Intelligent and successful inventors do not ordinarily work in a vacuum. It is natural for them to commence their endeavors by studying and analyzing what had been done by their predecessors and to begin their own operations at that point.

The objections to the award of priority to the defendants Kamp and Jahn are overruled. The Court finds and concludes that the defendants Kamp and Jahn were joint inventors of the invention in suit; that the German application on which they relied was filed in their behalf by Alex Kamp and Company; that they are entitled to the benefit of the filing date of the German application; and that the American application was properly filed by them as joint inventors.

The merits of the controversy still remain to be tried and determined. The plaintiffs' patent was issued to them as far back as April 15, 1958. The interference proceeding was declared by the Patent Office on March 27, 1961 and terminated on June 29, 1964 in an award of priority to the defendants Kamp and Jahn. The present action was filed on September 25, 1964. A final trial is yet to be had.

It should be noted that the civil non-jury calendar of this Court has been practically current and that this action could have been tried a long time ago. The Court is cognizant of the fact that some of the delay was due to the taking of depositions abroad and pursuing other discovery remedies. Nevertheless, since the defendants, who were awarded a patent on June 29, 1964, have been laboring under an injunction and have not received their patent as yet, the parties are entitled to some degree of expedition. The Court will fix an early date for trial if an application is made by any of the parties for that purpose.

This opinion will constitute findings of fact and conclusions of law. Any party may, however, present any supplemental or additional proposed findings or conclusions.