# LEMP *v.* RANDALL.

PATENT; INTERFERENCE; JOINT INVENTORS; EVIDENCE.

1. While a party to an interference may not defeat an award of priority to his adversary by showing that a third person, not a party to the proceeding, was the first inventor (following *Foster* v. *Antisdel*, 14 App. D. C. 552, and *Prindle* v. *Brown*, 24 App. D. C. 114), he may do so by showing that his adversaries, claiming as joint inventors, were not in fact such, and therefore not entitled to make the application in interference.

2. In an interference case, it is not necessary that the testimony of parties claiming to be joint inventors that they were such should be corroborated, and, unless there is a preponderance of evidence to the contrary, their testimony on this question will be sufficient.

No. 558. Patent Appeals. Submitted May 10, 1909. Decided June 1, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Albert G. Davis* and *Mr. Melville Church* for the appellant.

*Mr. Robert N. Kenyon* and *Mr. Richard Eyre* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from three concurring decisions of the Patent Office tribunals in an interference case in which priority of invention has been awarded Arthur F. Randall and Edmund A. Bates, appellees here, as joint inventors.

In their preliminary statement, Randall and Bates named July, 1899, as their date of conception, August, 1899, as their date of disclosure, and July, 1899, as the time when they first made drawings of their invention. They rely upon their filing date, February 3, 1900, for constructive reduction to practice.

Hermann Lemp, in his preliminary statement, alleges conception in December, 1899, disclosure and drawings December 20th and 21st of the same year, and reduction to practice January 12, 1900. His application was filed February 28, 1900.

The invention embraces a system of control for steam-propelled vehicles in which the boiler pressure is kept approximately constant by automatically regulating the supply of fuel to the burner and the feed of water to the boiler in accordance with the boiler pressure.

The counts of the issue sufficiently describe the invention for the purposes of this case, and are as follows:

"1. In a system of control for steam-propelled vehicles, the combination of an engine, a boiler, a burner, a variable-stroke water pump, a variable-fuel pump, means for synchronizing the movement of the pump pistons, means which receive a definite

movement from the engine for driving the pumps, and automatic compensating means between the pump pistons and the driving means whereby the pump strokes can be varied.

"2. In a system of control for steam-actuated apparatus the combination of an engine, a boiler, a burner, variable-stroke pumps for the water and fuel which automatically vary the amount supplied in accordance with the demand, a mechanical connection for driving the pump from the engine, which has a constant length of stroke, a compensating device between the connection and the pumps, and a throttle valve whereby the engine is directly, and the pumps indirectly, controlled.

"3. In a system of control for steam-actuated apparatus, the combination of a flash boiler, a burner, a variable-stroke pump for supplying water to the boiler, a direct connection between the boiler and the pump, a variable-stroke pump for supplying fuel to the burner, and a regulator which acts automatically to vary the stroke of both pumps, and is itself controlled by the pressure of the boiler."

The appellant earnestly insists that the Patent Office erred in refusing to award priority to him, on the ground that the testimony of Randall and Bates shows they were not in fact joint inventors, but that the invention was the sole production of Randall. The Patent Office refused to consider this question, upon the authority of *Foster* v. *Antisdel,* 14 App. D. C. 552, and *Prindle* v. *Brown,* 24 App. D. C. 114. In this we think there was error. In those cases the question before the court was whether a party to an interference proceeding could defeat an award of priority to the opposing party *by showing that a third person, not a party to the proceeding,* was the first inventor, and the court held that he could not. The ground of the decision was the obvious one that the object of an interference proceeding is to settle the question of priority between the parties thereto, and that evidence concerning a third party has no bearing on that issue. But here the case is different. Appellant did not seek to show that the right to the award of priority was in a third party, an alien to the proceeding, but that the senior parties to the proceedings were without standing, because it ap-

peared that they were not joint inventors, and hence not entitled to make the application in interference.

The application of Randall and Bates was in due form and was prima facie evidence of joint invention. No evidence was introduced by Lemp on this question, he relying solely upon the evidence of the appellees to sustain his contention that they were not joint inventors. One of the appellees' sketches, which it is conceded shows the invention, and which was made in 1899, contains the following notation made by Randall at the time: "Invented by Arthur F. Randall and Edmund A. Bates." Randall's testimony, which we have carefully examined, is clear and convincing. From that testimony it appears that he and Bates had been roommates at one time, and also had been associated in certain work in Boston. In the latter part of June, 1899, Bates returned to Boston from Cleveland, Ohio, and was a very frequent visitor at Randall's house and office. During these visits, being interested in the subject, they discussed the Edward S. Clark steam system "which included a flash boiler, a variable-stroke water pump to that boilor, and a hand lever through which the operator controlled the feed according to the demand." While discussing this system, Randall testified, the invention was made, and the sketches of the invention which were then made were the result of their joint effort. Bates died before the taking of testimony. It appears, however, that on January 19, 1904, he made an affidavit as to his recollection of occurrences leading up to the invention, which was introduced in evidence without objection. The statements in this affidavit are in harmony with Randall's testimony. There are also several letters in the record from Bates to Randall, tending to show that they regarded the invention as their joint effort.

It is contended by appellant that this testimony, being the testimony of parties, should be corroborated. There is a vast difference between the testimony of a party to an interference proceeding as to when he conceived an invention, and his testimony conceding that another contributed as much as he to the conception of an invention. In the former case, he is testifying in his own interest; in the latter, directly against his own inter-

est. Randall could have had no possible ulterior motive in testifying that Bates was jointly entitled to credit for the invention. On the contrary, it was in his interest to contend otherwise, for, with Bates eliminated, he would have been the sole owner of the invention.

We think the evidence clearly sufficient to sustain the joint application. It would work a great hardship on joint inventors if they should be required to introduce testimony of third parties to show how much each contributed to the result. Unless there is a preponderance of evidence to the contrary, their testimony should be sufficient on this question.

We fully agree with the tribunals of the Patent Office that the evidence clearly shows conception and disclosure of this invention by the appellees prior to December 20, 1899, the date of conception which it is conceded Lemp has established. This question is not seriously disputed by appellant, and, indeed, could not well be, in view of the conclusiveness of the testimony relating thereto, which we do not deem it necessary to review.

The question of lack of diligence not arising, it follows that the decision of the Commissioner of Patents is affirmed.

The clerk will certify this opinion and the proceedings in this court to the Commissioner, as required by law. *Affirmed.*