180

Court of Customs and Patent Appeals.
June 12, 1934.

Harry S. Demaree, Earl Babcock, and William S. Hodges, all of Chicago, Ill., for appellant.

Robert R. Candor, of Dayton, Ohio, for appellees.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal by the senior party, Crane, from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention to John A. Grier, as sole inventor, the said Grier being one of the alleged joint inventors (Grier and Warren), the junior parties. The counts involved are five in number and were claims taken from the Crane patent No. 1,704,655, issued on March 5, 1929, on an application filed March 17, 1927. The joint application of Grier and Warren was filed March 31, 1927. It will be seen that Crane is senior by fourteen days, and that both applications were copending.

After the taking of testimony by Grier and Warren, a motion was made by them to substitute for the joint application a sole application of John A. Grier. Motion was also made to permit the amendment of the junior parties' preliminary statement so as to change the dates therein set out. The Examiner of Interferences granted the motion to substitute the sole application for the joint one, but denied the motion to change the dates.

It was held by the Examiner of Interferences and the Board of Appeals that said Grier had conceived the invention of the counts involved prior to the conception date set up in the preliminary statement of the party Crane, and that Grier was diligent in reducing the invention to practice. The exact dates for conception and reduction to practice of the party Crane were not found by either of the tribunals below.

In this court three main questions are urged in appellant's assignments of errors:

First. That error was committed in permitting the change of application from a joint one to one in which Grier was the sole inventor, it being contended by appellant that the junior parties should be barred from such amendment on account of laches in discovering and presenting the motion.

Second. That the junior parties' application does not support the counts at issue.

Third. That in event it is held that the junior parties can make the counts and are prior in conception, there was a lack of diligence from just prior to the time Crane entered the field until the date of the junior parties' reduction to practice.

The subject-matter involved in the interference relates to refrigerating apparatus and more particularly to a motor-compressor unit for use in refrigerating apparatus which is hermetically sealed from the outside atmosphere.

▉ The first question to be considered is the propriety of permitting the substitution of

the application of the sole inventor for that of the joint inventors.

It is urged by appellant that appellees made no sufficient showing of lack of negligence at the time of preparing the original preliminary statement, in discovering the true facts which were afterwards set out in the affidavit. Appellant states that it is well settled that such a substitution is only permitted where the showing is clear that there was no negligence in discovering the true facts. Appellant urges that there is no showing in the record why the mistake as to the real inventor was not discovered until the taking of the testimony, and that the affidavit of Grier, filed in support of the motion, shows conclusively that the alleged evidence which made the substitution desirable was in Grier's possession at all times, and that it was later found when diligent search was made for it.

We have examined with some care the facts set out in the affidavit by Grier relied upon as a basis for the motion of substitution. It states, among other things, that, at the time of the filing of the preliminary statement of Grier and Warren, diligent search was made to establish all the facts necessary for the drafting of the preliminary statement; that every source was investigated and that every place was searched where there was reason to believe that facts required for the preliminary statement might be found and that search was made with due diligence and care; that shortly before the taking of the testimony in chief by Grier and Warren, the attorneys of record informed the said Grier that he would be questioned not only regarding his activities from the date of conception of the invention, but also as to his experience and activities in general prior thereto with respect to refrigeration; that Grier then, in an effort to obtain evidence showing his previous experiences in connection with refrigeration, began searching in a portion of a trunk at his home, which trunk contained papers relating to a certain refrigerator which he had previously developed and sold under the trade-name "Zima"; that there was no reason to believe that any of this matter concerning the Zima refrigerator had any connection with the refrigeration involved in the interference since the Zima refrigerator was quite different in character; that while searching in this trunk he found and for the first time recollected the sketch now marked "Grier and Warren Exhibit A" which discloses the subject-matter of the involved counts and that the finding of the sketch was accidental, and that it

was located in a place where it was not reasonable to expect it would be found.

Warren swears that he believes that Grier is the sole inventor, and that the joint application was filed through inadvertence. Grier swears that he is the sole inventor of the subject-matter involved, and that his filing of the joint application was without any fraudulent intent and occurred through inadvertence. The record shows that at the time when the original drawing was introduced into the testimony in chief of Grier and Warren, no testimony for Crane had been taken.

In view of the above-stated showing, it seems clear that the application of Grier, and not the joint application of Grier and Warren, was the proper one to consider in the interference, and we conclude that the Examiner of Interferences and the Board of Appeals, in affirming the action of the Examiner of Interferences, committed no error in permitting the substitution complained of.

Appellant has stressed with great earnestness, and discussed at great length, his contention that the junior parties cannot make the counts in issue, and bases his contention chiefly upon the ground that each of the counts contains limitations which will now be pointed out: Count 1 requires that the main frame comprises the *support for* the unit which consists of the motor and compressor. Count 2 calls for a *main supporting frame.* Count 3 contains the phrase "a main frame comprising a support for both a prime mover and a compressor [etc.]." Count 4 calls for a motor *mounted on* one side of the main frame member and the compressor on the other, and count 5 calls for a *main supporting frame and a motor and a compressor carried by said frame.*

Appellant urges that the counts involved in the Crane application, from which they were taken, mean that the frame must be the *only support* for the compressor and the motor and that it is shown in the junior parties' application that the main frame supports the motor and the compressor in part only, and that a third leg or additional support acts also to support the assembly.

Originally claim 3 of the Crane patent was involved in the interference. It reads as follows: "3. A motor compressor unit comprising in combination a central main frame, closure members secured to each side of said frame and forming two distinct chambers, a motor located in one of said chambers and a compressor in the other, said motor and said compressor being *supported entirely* by said frame." [Italics ours.]

The Examiner of Interferences held that the junior parties could not make this count inasmuch as the claim definitely required that the motor and compressor should be supported *entirely by the frame,* and that this constituted a limitation which would not read on the Grier and Warren disclosure. As to the other counts it was held that under the rule that claims must be given the broadest construction of which they are susceptible even though one of the parties is a patentee (Morgan v. Taylor v. Hanson, 1914 C. D. 90), that the counts read upon the Grier and Warren disclosure. In substance it was held that the main frame of Grier and Warren did support the motor and the compressor even though a third leg was an additional support.

At first blush the question presented here would seem to be a troublesome one in view of this court's decisions in Field v. Stow, 49 F.(2d) 1072, 18 C. C. P. A. (Patents) 1502, Mudd v. Schoen, 54 F.(2d) 959, 19 C. C. P. A. (Patents) 840, and Atherton v. Payne, 54 F.(2d) 821, 19 C. C. P. A. (Patents) 867, and other cases where certain claimed limitations were held to be of such importance as to prevent one of the interference parties from making the counts. However, when these cases are carefully considered and all facts of the instant interference are taken into consideration, it becomes clear that the authorities relied upon do not require that in the instant case the so-called limitations pointed out by appellant shall be held to prevent the junior parties from making the counts.

As above stated, appellant in his said patent has distinguished between "supported entirely by" and "supported by," and it has been held in this proceeding that the junior parties cannot make the count which provides "supported entirely by." Appellant still has, in his patent, the claim which is limited by the phrase "supported entirely by" and the same has not been affected by this interference proceeding.

We are of the opinion that the concurring tribunals below correctly held that the junior parties could make the counts at bar and properly overruled the motion for dissolution of the interference.

As to the third contention of appellant which relates to diligence on the part of the party Grier, appellant urges that from October, 1925, to April, 1926, Grier and Warren were working on radio apparatus, and that during this time they held conferences and made plans to organize the company to produce a refrigerating apparatus, and that during the period from April to October, 1926, an entirely different machine was constructed, which machine had been conceived by one Van Deventer, who is not a party to this interference.

The Examiner of Interferences discussed this question in great detail and stated that Grier must prevail in this interference if "he was exercising due diligence from just prior to December 8, 1925, until March 31, 1927, when he filed his application for patent, or until the first actual reduction to practice which he may establish which can not be prior to May, 1926, the date alleged by Grier for reduction in his preliminary statement." The testimony of the witnesses as to what took place in that period of time is set out in the statement of the Examiner of Interferences and the conclusions which he drew therefrom are clearly stated. The Examiner of Interferences said:

"Further, it appears from the testimony that Grier and those working in his behalf were exercising due diligence with respect to his invention from just prior to December 8, 1925, when it will be assumed although not conceded that Crane entered the field, until Grier reduced to practice, as held, in January, 1927. This period is but a little over one year and is certainly not an unreasonable length of time in which to design, develop, construct and test a machine of the type here under consideration. As stated by the witnesses, other parts of the composite machine, such as valves, etc., had to be developed and associated with the novel refrigerating unit, and many unforeseen difficulties incident to the production of a new type of mechanism were necessarily encountered. It appears that the members of the new organization were endeavoring to produce the unit as rapidly as was practical under the circumstances.

"It is true that over some portion of the period in question the Van Deventer organization was engaged in constructing the two machines which were demonstrated at the New York Electrical show in October, 1926. These machines appear to be of the type shown in the Van Deventer application, Serial No. 141,213, which application has been held not to support the counts. But even assuming, therefore, that these two machines did not respond to the issue, it is not believed that Grier was lacking in the exercise of reasonable diligence. It appears that the immediate production of these two machines was necessary to preserve the financial status

of the entire new project. Any departure from the bell type of construction was merely a necessary temporary measure, and, as indicated by the testimony, the bell type of structure was always regarded as the proper and ultimate construction and was never abandoned. In fact it appears that negotiations and conferences relative to the bell type of unit, as well as work on the other parts of the machine, continued while the two October machines were being constructed, and that after their completion the efforts of the entire organization were again directed to the bell type construction. Under all the circumstances of the case it is believed that Grier and his associates followed a reasonable course of action, and in any event it does not appear that Grier was so clearly lacking in diligence at any time during the period in question as to deprive him, clearly the first to conceive, of the benefits of his invention. Joy v. Morgan, 320 O. G. 4, 54 App. D. C. 110, 295 F. 931, 1924 C. D. 208; Christensen v. Ellis, 94 O. G. 2561, 17 App. D. C. 498, 1901 C. D. 326. Grier should prevail.

"It becomes unnecessary to consider the senior party's record."

The Board of Appeals, in affirming the action of the Examiner of Interferences, said:

"Passing now to the matter of diligence which we regard as the most difficult question raised in this appeal. We do not consider there is any reasonable doubt but that the party Grier and his associates were diligent in their efforts to produce their new refrigerator. The fact that they interrupted their work for a time in order to produce another unit for display at a show in order to raise money we do not regard as indicating lack of diligence. The feature of the record, however, which we do find the most troublesome is the fact that they devoted a substantial portion of their time to providing other elements for the complete refrigerator. In this particular instance we do not believe that there was any doubt but that the unit designed by the party Grier would function for the intended purpose if submitted to a test, and it is believed obvious that the engineers of his company had no doubt as to this. It also appears that at that date there was no particular demand for such a unit as an independent article of manufacture and that the only article which probably would be open to commercial success would be a complete refrigerator. It is to be remembered that this company was not attempting to build an interference record but a refrigerator, and it is our view that under the circumstances slightly more than a year was not too long for the development which they were carrying on and that in view of the nature of their activities it was not necessary in that length of time for them to have stopped work on their complete refrigerator to build a make-shift unit of the character called for by the counts in order to produce an actual reduction to practice. It is our view that where an inventor is attempting to provide other cooperating devices in order to properly utilize his invention, he is entitled to some additional time for this purpose and each case must be decided on its own merits. It appears to us that Grier and his associates were not primarily concerned with obtaining a patent but were endeavoring to produce a new and practical refrigerator which they would be free to manufacture. It has been repeatedly held that an inventor has his choice between actual and constructive reduction to practice and we consider that the party Grier was justified in waiting until the complete details of their actual construction were worked out before filing an application. We agree with the Examiner of Interferences, therefore, that the party Grier was diligent. For a discussion of the record the examiner's decision should be consulted."

We agree with the decision of the Board of Appeals that under the circumstances of this case Grier has offered sufficient explanation for the delay in his reduction to practice. We think under all the circumstances he acted with reasonable diligence. Consideration must be given to the nature of his employment and to the things which he was required to do under such employment which took him away temporarily from the actual reduction to practice of the particular invention outlined in the counts involved. To hold otherwise would pave the way for the denial of a patent to the one who was first to conceive the invention where the delay was caused by considerations over which he had no control.

We have given very careful consideration to all of the contentions and arguments made by appellant, but we are not convinced that there was any error in the decision of the Board of Appeals in affirming the decision of the Examiner of Interferences in awarding priority of the subject matter of the issues presented to Grier, as sole inventor, and the decision of the Board of Appeals is affirmed.

Affirmed.