**MANNY v. GARLICK et al.**

**Patent Appeal No. 4711.**

Court of Customs and Patent Appeals.

April 5, 1943.

Rehearing Denied May 17, 1943.

Earl & Chappell, of Kalamazoo, Mich. (Munson H. Lane, of Washington, D. C., of counsel), for appellant.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Interference Examiners of the United States Patent Office, which awarded priority of invention of the subject matter of all the counts in issue to Mark J. Garlick, one of the joint applicants in the application of the party Garlick, Lee and Barney.

The interference arose between a patent issued to appellant on July 25, 1939, upon an application filed July 14, 1938, and the joint application of the party Garlick et al. filed July 11, 1938.

Appellant being the junior party the burden was upon him to establish priority of invention by a preponderance of evidence.

There are six counts constituting the issue of the interference, numbered from 1 to 6 inclusive. Counts 1 and 2 are illustrative of the invention defined in the counts and read as follows:

"Count 1. In a machine for forming notched openings in a stack of sheets and the like, a boring tool, and a slotting tool located closely adjacent said boring tool, said slotting tool comprising a blade angular in cross section and having the work engaging edge thereof sharpened, said sharpened edge being substantially coplanar with the cutting edge of the boring tool, and means for reciprocating said tools together relative to the work.

"Count 2. In a machine for forming notched apertures in a stack of sheets or like work, a frame, a tool, means for positively actuating said tool on an operating stroke to and through work supported on the frame, including a reciprocating actuator member, spring means for returning the actuator member to initial position upon completion of the operating stroke, and means to cushion the actuator member at the end of the return stroke thereof, comprising a cylinder on the frame having a valved exit port and a plunger carried by the actuator member slidable in said cylinder."

The decision of the board states: "The counts relate to a machine for perforating and notching paper sheets in stacks. The sheets are of the type intended for use in loose leaf binders or filing cabinets. Prior to the production of the machines disclosed in the applications of the parties, such sheets were perforated and notched in two separate operations. The paper was first perforated by a machine of the type illustrated in patent No. 2, 193, 817 (Garlick et al. exhibit S). After the hole had been made in the sheets a notch or slit was cut from the hole to the adjacent edge of the sheets. The present devices have for their purpose the simultaneous drilling or perforating and notching of the sheets."

Both parties took testimony. It appears that Garlick died on September 15, 1940, before the decision of the board was rendered.

The board found that appellant had established conception of the invention as set forth in counts 1 and 3 to 6 inclusive by "the end of March, 1937," and as set forth in count 2 "by May 12, 1938"; that he was limited to his filing date, July 14, 1938, for reduction to practice; that Garlick "conceived counts 1 and 3 to 6 by July 12, 1937 and count 2 by November 2, 1937"; that he was limited to the filing date of the joint application, July 11, 1938, for reduction to practice of the invention; that while appellant was the first to conceive the invention defined in counts 1 and 3 to 6, he had failed to establish diligence in reducing it to practice, and that Garlick was the first to conceive and reduce to practice the subject matter of count 2.

It appears that appellant's patent has been assigned to the F. P. Rosback Company of Benton Harbor, Michigan, and the joint application of Garlick, Lee and Barney has been assigned to the Challenge Machinery Company of Grand Haven, Michigan.

The board also found that as between the joint applicants Garlick, et al., Garlick was the sole inventor of the subject matter of the counts.

In its decision the board stated as follows:

"The parties Garlick, Lee, and Barney contend that Garlick is the inventor of the

subject matter of counts 1 and 3 to 6 and that Lee and Barney are the inventors of count 2.

\* \* \* \* \*

"Manny contends that Garlick et al. have failed to prove priority because they must rely upon their own testimony and since joint inventors may not corroborate each other their proofs are insufficient. Garlick et al. contend that the proofs establish sole inventorship by Garlick of counts 1 and 3 to 6 and joint inventorship by Lee and Barney of count 2.

"It is believed that the record clearly establishes that Garlick is in fact the sole inventor of the subject matter of counts 1 and 3 to 6. It is also believed that the application of the Garlick invention to a power operated machine of the EH type rather than the foot operated E type involved nothing more than obvious mechanical skill. The work of Lee and Barney therefore inures to the benefit of Garlick who must be held to be the sole inventor of all the subject matter in issue.

\* \* \* \* \*

"Priority of invention of the subject matter in issue is hereby awarded to Mark J. Garlick as sole inventor."

Appellant's reasons of appeal are 15 in number. The first two of these reasons are the usual broad assignments of error in awarding priority to appellee and not awarding it to appellant. The following nine reasons relate wholly to alleged errors of the board with respect to conception, reduction to practice and diligence by appellant.

Reasons of appeal 12, 13 and 14 relate wholly to count 2 of the interference. In number 12 it is alleged that the board "erred in holding that Garlick had conceived the invention of count 2 by November, 1937." In number 13 it is alleged that the board erred in holding that Garlick "had anything to do with the invention of count 2" and in number 14 it is alleged that the board erred in "holding that either Garlick or the party Garlick, Lee and Barney had any right to make the claim which constitutes count 2 of the interference and erred in failing to dissolve the interference as to said count."

 As to this last named reason of appeal, while it appears that the examiner denied a motion by appellant to dissolve the interference with respect to count 2, it does not appear from the record that appellant raised this question before the board. It was not referred to in the decision of the board and in appellant's brief before us it is not pointed out in what particulars the disclosure of the Garlick et al. application fails to support the count. Therefore this reason of appeal will not be considered by us.

With respect to counts 1 and 3 to 6 there is no reason of appeal challenging the finding of the board based upon the testimony as to the dates to which Garlick is entitled for conception and reduction to practice.

It will be observed from the foregoing that an unusual situation is presented in that the board has awarded priority of invention to one of the applicants in a joint application.

That matter will be discussed hereinafter, and in view of our conclusion with respect thereto, it would not be necessary for us to review in this appeal the holding of the board that Garlick was, in fact, the first inventor of the subject matter of counts 1 and 3 to 6. It is our opinion, however, that the final termination of this interference may perhaps be expedited if the findings of the board be reviewed at this time with respect to the factual question of inventorship as between appellant and Garlick, and we will therefore proceed to consider that matter.

With respect to counts 1 and 3 to 6, as hereinbefore noted, the board found that appellant had conceived the subject matter by the end of March, 1937, and limited him to his filing date July 14, 1938, for reduction to practice. It also found that appellant was not diligent in reducing the invention to practice. Appellant accepts the finding of the board with respect to date of conception but contends that the evidence establishes that he reduced the invention defined by these counts to practice in March, 1937, again in August, 1937, and again in January, 1938. If any of these dates are established, then, assuming that the dates awarded to Garlick are correct, the board erred in finding that Garlick was the first inventor.

Appellant also contends that the board erred in holding that appellant was not diligent in reducing the invention to practice.

It appears that appellant is a designer in the employ of the F. P. Rosback Company, appellant's assignee; that said company, among other things, manufactures machines for forming slotted openings in sheets to

adapt them for use in binders or other holders; that in said manufacture both drilling and slotting operations are involved, which theretofore were performed successively. The problem of devising a machine which would perform these operations simultaneously was submitted to appellant by Mr. Rosback, the general manager of the company.

Appellant testified that he invented such a machine and tested it. No specific dates were named by appellant with respect to the invention prior to October 6, 1937. As to specific dates he testified as follows: "A. I could not call dates, my memory is too poor for that, but all this work followed along the general line and it was not abandoned at any time."

Appellant did testify, however, that the problem was submitted to him upon Mr. Rosback's return from a certain train trip, which Rosback testified occurred just before December 25, 1936. He also testified that appellant completed and tested the machine corresponding to said counts about the middle of March, 1937.

With reference to said test appellant testified as follows:

"Q. 8. Did you test this machine which you made, Mr. Manny? A. Yes. We tested it out as soon as we had that combination in shape to do so.

"Q. 9. Did you encounter any difficulties at all in operating this machine? A. Oh, yes. We had difficulties a plenty. We put the knife and the drill in conjunction and we had trouble with chips in the knife clogging it. And it caused us all that trouble, and we had to work and experiment with the knife until we found a method of overcoming it."

Appellant further testified as follows:

"Q. 10. Did you eventually find a way to overcome that difficulty? A. Yes, we did.

"Q. 11. What did you do then? A. I told Mr. Rosback that the operation done in conjunction was perfectly practical and I thought we could put the machine through in that manner.

"Q. 12. Did you then go ahead with the machine? A. Yes. They gave me orders to go ahead and design a machine embracing those features."

Appellant then identified certain drawings, Exhibits 1 and 2, and testified that Exhibit 2 was made on October 6, 1937, and that directly thereafter a machine was made in accordance with such drawings. He did not, however, testify that any test of that machine was ever made, and the only test testified to by him was the one which took place apparently in March.

Homer F. Rosback, hereinbefore referred to, testified with respect to the said March test as follows:

"Q. 13. Will you just explain what Mr. Manny did? A. Mr. Manny, at that time, after the holidays were over, started in, and we had a sample machine we had been working with, and after thinking the thing through he made a make-shift piece and put the knife up against the rotary drill and clamped them tight together so that the rotary drill would revolve, and demonstrated that this idea of the knife and drill together in close relation to one another would be feasible and would work.

"Q. 14. You say he demonstrated that. Would you go into a bit more detail, please? A. We had a drill and of course we have always felt that a single knife, the single piece knife where they were developed and the converging points were of one piece,—in other words, it would give the knife much more strength. We used that type of knife and in that method we also learned at that particular time that the additional stress and strain on the knife was very much greater than it was if it cut into an open hole.

"Q. 15. How did you find out that that was the case? A. By trying this in the experimental unit that we had and breaking a knife or two, although we did demonstrate that it could be done.

"Q. 16. Did you succeed in boring and notching sheets with this experimental machine? A. Oh, yes. Quite a few. In other words, we had proven to ourselves that the entire method was a method which could be satisfactorily used.

"Q. 17. On this experimental machine did you have any means for returning the head after the cutting stroke? A. The means for returning the head was by virtue of the spring inside the column of the machine.

"Q. 18. You mentioned having knife trouble, did you take any steps to correct that? A. Oh, yes. Naturally, we took—when we had knife trouble, we started in to develop various different shapes, sizes and kinds of clearances with these knives, but always maintaining the development that we had of the one piece knife, *and after we found out how to make clearance and*

*put clearance in there, we were ready to go ahead.* (Italics ours)

"Q. 19. When did you have a satisfactory knife? A. As closely as I can tell you about a satisfactory knife, in the latter part of August or the first part of September we demonstrated definitely to ourselves that we had a satisfactory knife.

"Q. 20. What year? A. That was 1937.

"Q. 21. Will you please explain a little more fully why you had difficulty with the knife on the experimental machine in greater amount tha*t* you did on commercial machines of that period? A. Our commercial machines of that period were doing two cycle work and the knife was cutting into a hole that had already been drilled. In other words, the point of the knife did not do any actual cutting, and when we put the drill and knife in close relationship to one another, very close, it produced a great strain on the very point of the knife and sometimes split. This was due to insufficient and *incorrect clearance and when we got* the clearance worked out, *that was the time then that* we were ready *to go ahead.*" (Italics ours.)

The witness further testified as follows:

"Q. 24. What did you do after you had worked out the knife to your satisfaction? A. We told Manny to go ahead and develop the machine that would embody the knife and these various parts.

"Q. 25. Do you know whether he did that? A. Yes, he did."

The witness further testified that thereafter drawings Exhibits 1 and 2 were made and a machine was produced in accordance with such drawings; that such machine was tested but he did not testify as to the result of such test nor as to the date when it was made, but he did testify that the machine was completed early in January, 1938, and the fair inference is that it was tested shortly thereafter.

Rosback further testified that the machine was redesigned about March 1, 1938, and that machines in accordance with such designs were produced and first shipped in June, 1938; that patent drawings for the invention were first made up on May 11 or 12, 1938; that a machine embodying the invention was tested prior to May 11, 1938. With respect to this test, the witness testified as follows:

"Q. 97. You mentioned testing the machine shown in the photographs Exhibit

9. Was that done before May 12, 1938? A. Yes.

"Q. 98. How did you test the machine? A. By having the rotary tool and notching tool in close relationship to one another and under power to see that it cut holes and notched satisfactorily.

"Q. 99. How did it operate? A. Satisfactorily.

"Q. 100. It bored and notched all right? A. Right."

J. D. Arent, a witness for appellant, an employee of the Rosback Company, testified with reference to the machine tested in March 1937 as follows:

"Q. 15. Do you remember seeing that machine operate on paper, boring and notching it? A. Yes, sir.

"Q. 16. How did it operate? A. Satisfactorily. *We had some trouble with breakage of knives.*

"Q. 17. By that what do you mean? A. We *had not determined the clearance.*

"Q. 18. Was the knife the one-piece knife? A. Yes, sir.

"Q. 19. That was a knife similar to one you had used before? A. Yes, sir.

"Q. 20. What did you do about breakage of knives, did you take any steps to eliminate that? A. Yes. We *experimented with clearance and found that we could correct it by putting the knife on with clearance in the correct positions.*

"Q. 21. When had you solved this knife problem? A. Some time in the early fall." (Italics ours.)

The witness further testified that a machine was made in accordance with the drawing, Exhibit 1, "along in May of 1938" and that it was tested. With respect to such test he testified as follows:

"Q. 39. Do you remember whether the machine made in accordance with the drawing was tested? A. Yes.

"Q. 40. How was it tested? A. Through the various experimental stages we go through.

"Q. 41. Did you cut paper? A. Yes, sir.

"Q. 42. And did it cut satisfactorily holes and notches? A. Yes.

We find no other testimony in the record with respect to the testing by appellant or in his behalf of any machine embodying the involved invention.

■ It is appellant's position that the shortcomings of the machine tested in March, 1937, were remediable by mechanical skill and he invokes the well established rule that perfection for commercial use is not necessary for a successful reduction to practice.

However, we are not satisfied that it was a simple matter to make such changes in the machine as would make it useful. It is clear that the trouble was not alone in the character of knives employed but also in the relationship of the knives to the drill. Attention is called to the testimony of Rosback hereinbefore quoted wherein he testified, "after we found out how to make clearance and put clearance in there, we were ready to go ahead," and that it was not until August or the first part of September of 1937 that he considered that they had a satisfactory knife.

With respect to the testimony of Rosback concerning the test of the redesigned machine before May 11, 1938, it is significant that appellant himself made no reference to it in his testimony and the testimony of Rosback respecting his conclusion that the machine worked satisfactorily is not sufficient, in our opinion, to establish reduction to practice. The same observation is applicable to the testimony of the witness, Arent.

■ Therefore we are in agreement with the finding of the board that appellant has not established reduction to practice of the invention defined in said counts prior to his filing date.

■ As appellant was the first to conceive the invention but the last, as held by the board, to reduce it to practice, the burden was upon him to establish diligence in reducing it to practice from immediately before Garlick's entry into the field, viz., July 12, 1937, as found by the board, to July 14, 1938, appellant's filing date.

■ The board found that this required diligence is not established by the evidence, and we are in accord with this finding.

Appellant testified that after the test of March, 1937, he received orders to design a machine embodying the invention, but he testified to no activity upon his part until October, 1937, when he made a drawing of the proposed machine. There is nothing in the record to indicate that with reasonable diligence upon the part of appellant, when the critical period began, the invention could not have been reduced to

practice within a comparatively short time, either through completing and properly testing a machine embodying the invention, or the filing of an application for a patent.

■ Upon the evidence in the case we find no error in the finding of the board that neither Lee nor Barney jointly or severally made any such contribution to the invention as to entitle them to be considered as joint inventors with Garlick.

■ Inasmuch as appellant has not challenged by his reasons of appeal the dates for conception awarded to Garlick, other than the finding that Lee and Barney were not joint inventors with him, we must accept such date as correct.

Furthermore, assuming that Garlick is entitled to the date of the joint application for constructive reduction to practice, the finding of the board with respect to the date for reduction to practice to which Garlick is entitled must also be accepted by us as correct, it not being challenged by appellant's reason of appeal except in one particular hereinafter discussed. With this premise we find no error of the board in holding that based upon the evidence Garlick was the first and sole inventor of the subject matter of said counts.

We next come to the consideration of count 2.

With respect to this count the board held that the work of Garlick's co-applicants, Lee and Barney, in the application of the invention defined in counts 1 and 3 to 6 to a power operated machine of the type shown in the testimony involved nothing more than obvious mechanical skill and therefore their work with respect thereto inured to the benefit of Garlick; that such application is established as not later than November 2, 1937, and therefore Garlick was given that date for conception of the invention as defined by count 2. The board further held that Garlick had not established reduction to practice prior to the joint application filing date.

With respect to appellant, the board held Manny was entitled to the date of May 12, 1938, for conception of the invention of count 2 and had not established actual reduction to practice prior to his filing date; that Garlick being the first to conceive the invention and the first to reduce it to practice was the first and sole inventor.

It is appellant's contention that count 2 is unrelated to counts 1 and 3 to 6 in that it merely calls for a tool broadly, and not

the combination of boring tool and slotting tool of counts 1 and 3 to 6.

Appellant's brief states: "Count 2 is directed to a combination of elements which might be used with the combination of tools of Counts 1 and 3 to 6, but the combination could be used with any tool and still come within the scope and spirit of the claim. Even if the claim be construed to call for a tool, which would form a notched aperture, it might be a tool entirely foreign to the tool combination of Counts 1 and 3 to 6."

Granted that the above quoted statement is correct, if Garlick was the first to conceive the combining of his device defined in counts 1 and 3 to 6 with the elements claimed in count 2, and assuming that the work of Lee and Barney inured to the benefit of Garlick, then Garlick is the first inventor of the subject matter of count 2.

■ It appears that Garlick's first machine was a foot operated machine and that count 2 relates to a power operated machine. We think it very obvious from the record that Garlick contemplated from the beginning the use of his invention in a power operated machine, and we are in agreement with the board that only mechanical skill was involved in adopting the machine to a power operated machine. Therefore the work of Barney and Lee inured to the benefit of Garlick.

It follows from the foregoing that we are in agreement with the board that Garlick was the first and sole inventor of the subject matter of count 2, based upon the assumption that he was entitled to the filing date of the joint application of July 11, 1938, for constructive reduction to practice of the invention.

■ While Garlick claims that the evidence establishes an earlier actual reduction to practice with respect to all the counts, the evidence on his behalf is of the same general character as the evidence on behalf of appellant in his claimed actual reduction to practice, consisting of general statements such as that the machine was satisfactorily operated, and the same reasons for holding that appellant had failed to establish actual reduction to practice prior to his filing date apply to the evidence on behalf of Garlick with respect to actual reduction to practice by him.

We now proceed to a consideration of appellant's reason of appeal number 15, which reads as follows: "15. The Board of Interference Examiners erred in failing to hold that there was no proof of joint activity on behalf of those constituting the party Garlick, Lee and Barney with reference to the invention of any count in interference and that said party had failed to sustain the burden of proving good faith and showing diligence in efforts to re-form the interference, thereby disentitling said party or Garlick to an award of priority in view of the proofs adduced."

As hereinbefore observed, an unusual situation is presented in this case, in that the board has awarded priority of invention to one of the applicants of a joint application, without a sole application having been filed by him.

Had appellant raised this question in his reasons of appeal it would be necessary for us to decide the question of error on the part of the board in awarding priority to one of joint applicants in an interference proceeding between joint applications and an application or patent of another party.

Appellant's reasons of appeal, however, do not raise this question. It will be observed that reason 15 hereinbefore quoted consists of two parts:

1. That the board erred in holding there was no proof of joint activity on behalf of the joint applicants with reference to any count of the interference, and

2. "that said party had failed to sustain the burden of proving good faith and showing diligence in efforts to re-form the interference, thereby disentitling said party or Garlick to an award of priority in view of the proofs adduced."

■ With respect to the first part of this reason of appeal above stated we do not construe it as presenting any question requiring our consideration, for if the board erred in the respect therein stated an award of priority to appellant would not for that reason be warranted, and furthermore if it should have been held that Garlick, Lee and Barney were, in fact, joint inventors then the second part of this reason of appeal would present a wholly immaterial question.

However, as hereinbefore stated, we find no error in the holding of the board with respect to the question of joint inventorship by Garlick, Lee and Barney.

The second part of this reason of appeal clearly raises only the question of good faith and diligence upon the part of the

party Garlick et al., in its effort to reform the interference, and upon this branch of the case that is the only question argued by appellant in his brief.

The record shows that the interference was originally declared on December 6, 1939, upon ten counts, and Preliminary Statements were due on January 8, 1940. Both appellant and the party Garlick et al. filed Preliminary Statements before that date. On February 10, 1940, appellant moved to dissolve the interference with respect to seven of the counts upon the ground that Garlick et al. had no right to make them. The motion was granted on June 8, 1940, with respect to four of the counts and the interference was then reformed upon the six counts now before us.

The record shows that on June 21, 1940, times for taking testimony were reset, and on November 14, 1940, the testimony on behalf of appellant was taken.

On January 22, 1941, the party Garlick et al. filed a request to extend the time for taking testimony on behalf of Garlick et al. for thirty days beyond the time theretofore set, the reason stated being as follows:

"The request for the foregoing extension is for the reason that recently circumstances have been discovered which will require converting the original application (now in interference) by removing two of the applicants and making it the sole application of one of the joint applicants, filing a divisional application in the name of the other two joint applicants and reforming the interference to include the new divisional application.

"It is thought that the foregoing should occur before taking testimony of Garlick et al and the present time set for taking testimony is not sufficient for that purpose."

The record does not show any action upon this request.

On February 14, 1941, the party Garlick et al. filed with the Examiner of Interferences a request to suspend proceedings. This request reads as follows:

"A request has been filed in the application of James Wesley Lee and Freeman Barney for Paper Boring and Slotting Machine, filed Feb. 14, 1941, Serial No. 378,974, to reform the present interference to include claims 9 and 10 thereof which

are identical with counts 4 and 5 of this interference.

"The above application of Lee and Barney is a division from the patent application of Garlick, et al, Serial No. 218,552, now in this interference, and the proper papers will be filed in due order in accordance with the practice as applied in In re Roberts, 49 App.D.C. 250, 1920, C. D. 158, which will convert the said application of Garlick, et al, into the sole application of Garlick as to certain of the claims and counts and will entitle the above Lee and Barney to file the above divisional application containing other of the claims and counts which will require returning the said Garlick, et al, application to the Primary Examiner to be converted.

"It is requested that proceedings in this interference be suspended pending the foregoing reformation of the interference and converting the said application.

"This request to suspend proceedings is not interposed for the purpose of delay but is for the reasons above explained."

Counts 4 and 5 above referred to relate to the interference as originally declared. It was dissolved as to count 5, and in the reformed interference original count 4 was numbered count 2.

On February 19, 1941, this request was denied by the Examiner of Interferences. He concluded his decision with the following statement:

"* * * This interference was declared December 6, 1939, and no adequate showing has been submitted on behalf of the senior party to excuse the long delay in taking action with respect to the reformation of the interference.

"For the reasons indicated, the request is denied."

The testimony on behalf of the party Garlick et al. was taken on February 24, 1941.

On April 8, 1941, the primary examiner filed a request with the Examiner of Interferences which reads as follows: "Sir:

"Jurisdiction of the above entitled interference is requested for the purpose of converting said Garlick et al application into a sole application of Garlick as requested by the applicants in said case. Counts 4 and 5 of said interference will also be eliminated as requested by the applicants Garlick et al to become the issue of a new interference between Manny

and the joint application of Lee and Barney."

On April 30, 1941, the Examiner of Interferences denied this request. In his decision he stated:

"* * * Apparently, the patentee Manny took his testimony and filed the same without knowledge of any intent on the part of Garlick et al. to seek a reformation of the interference. The party Garlick et al. has taken testimony and Manny has submitted his printed record.

"The changes contemplated by the proposed reformation of the interference are obviously such as would materially change the situation with which Manny is confronted in this contest. The proposed action of Garlick et al. comes at a very late period in the interference and will cause delay particularly in view of the fact that a new interference is proposed. The party Garlick et al. has apparently been guilty of laches or a lack of diligence in seeking reformation of the interference. The showing submitted by Garlick et al. in excuse of the delay is not impressive. The party Manny is a patentee and it is believed said patentee should not have this contest further delayed for a reformation concerning which the patentee is not responsible. Because of this delay, without adequate excuse, the request by the Primary Examiner for jurisdiction is denied, and the interference will proceed in its present condition as to the parties."

On May 5, 1941, the party Garlick et al. filed a letter in the Patent Office, stating that there was no objection to proceeding with the interference in its present condition provided that the testimony of Lee and Barney be given the weight of independent witnesses and be entitled to corroborate the evidence of Garlick and with the understanding that the Garlick et al. application would be made a sole application of Garlick except as to counts 4 and 5, which counts would be cancelled therefrom and be "dealt with in the Lee and Barney divisional application in accordance with the outcome of this interference." With respect to diligence in seeking the reformation of the interference the letter states:

"With respect to the alleged inexcusable delays on the part of Garlick et al, this has not seemed to have been an important issue. There are several facts pertinent to this matter which have not been presented of record but which will be submitted when and if the occasion for doing so arises."

So far as appears from the record no additional facts respecting diligence in reforming the interference were presented.

On May 8, 1941, the Examiner of Interferences addressed a letter to the party Garlick et al. in which it was stated: "Said party is advised that the Board of Interference Examiners will at final hearing award priority in accordance with the record and the proofs submitted and will not in any way be bound by any statements made by the party Garlick et al. in the communication filed May 5, 1941."

On November 17, 1941, the Board of Interference Examiners rendered its decision awarding priority of invention to Garlick alone with respect to all of the counts. No discussion was had with respect to the holding of the Examiner of Interferences that Garlick et al. had not been diligent in attempting to reform the interference.

We note that the Examiner of Interferences who rendered the decisions above referred to was also a member of the Board of Interference Examiners which rendered the decision here appealed from.

We also note that so far as appears Garlick has not yet filed a sole application for the invention here involved. While the joint application of Lee and Barney involving count 2 is not in the record, it does appear that such an application was filed prior to Feb. 15, 1941, and upon final hearing it was contended that they were joint inventors of the subject matter of count 2.

We have thus set out fully the proceedings found in the record preceding the decision of the board, for the reason that they are material in the consideration of appellant's 15th reason of appeal respecting good faith and diligence of the party Garlick et al. and of Garlick in their efforts to reform the interference.

The brief on behalf of Garlick, Lee and Barney is signed by counsel as "Attorney for Appellees" and it is there contended that the matter of diligence set forth in appellant's 15th reason of appeal raises a question that may not be considered by us upon this appeal; that if there be any lack of diligence involved, which is denied, it is a matter of purely ex-parte consideration which can have no bearing upon the question of priority of invention.

It is stated in the brief of counsel that in this proceeding "all steps have been in strict accordance with the procedure and practice as applied in In re Roberts, 49 App.D.C. 250, [263 F. 646] 1920, C.D. 158." In that case it appears that a joint application made by Roberts and his son was involved in an interference with one Bruckman. Priority was awarded to Bruckman upon the ground that the testimony showed that Roberts and his son were not joint inventors. After such award of priority a patent was issued to Bruckman. It appears that more than two years after the issue of said patent Roberts filed a sole application for the invention as a continuation of the former joint application which was presumably still pending in the Patent Office. His claims were rejected upon the ground that the patent to Bruckman was a statutory bar to their allowance, the Patent Office tribunals declining to consider said sole application as a continuation of said joint application. This the court found to be error and held that Roberts was entitled to the filing date of the joint application for conception and reduction to practice of the invention; that the joint application was filed through mistake or inadvertence and without fraudulent intent. Therefore the decision appealed from was reversed. However, in concluding its opinion the court stated:

"It perhaps is unnecessary to add that a party who seeks to correct his own mistake must act with reasonable diligence, and also assume the burden of establishing his good faith."

In the last cited case the court referred to the case of Lemp v. Randall, 33 App. D.C. 430 as follows: "The Assistant Commissioner cites our decision in Lemp v. Randall, 33 App.D.C. 430, in support of his conclusion; but the question here in issue was neither involved nor discussed in that case. It there was ruled that the Patent Office should have determined whether the joint applicants were in fact joint inventors, for if it appeared they were not there would be a failure of parties; that is to say, a finding that joint applicants are without standing to contest the question of priority with another applicant destroys the basis for an award of priority. In that case the joint applicants insisted that they were joint inventors, and the court so found."

In the case of Briggs et al. v. Kaisling, 53 App.D.C. 49, 288 F. 254, there was involved in an interference with Kaisling a joint application made by Briggs and one Jacobi. The Patent Office tribunals held that Briggs was the sole inventor as between himself and his co-applicant, and because of failure to prove joint invention by Briggs and Jacobi, awarded priority of invention to Kaisling. The Patent Office denied Briggs either the privilege of amending the joint application or of filing a sole application. This, the court held, was error and reversed the decision of the Patent Office. It does not appear that any question of diligence was raised in that case.

In this court the question of diligence in filing a sole application to take the place of a joint application in interference was considered in the case of Crane v. Grier and Warren, 71 F.2d 180, 21 C.C.P.A., Patents, 1163.

Grier and Warren had filed a joint application which was placed in interference with a patent to Crane. After the testimony was taken on behalf of Grier and Warren, motion was made to convert the joint application into a sole application of Grier, and an amendment was submitted for that purpose. This motion was granted. The Patent Office tribunals held that Grier was the first inventor and awarded priority to him.

Upon appeal to this court, Crane contended that Grier and Warren were not diligent in seeking to convert the joint application into a sole application of Grier and therefore the Board of Appeals erred in allowing such conversion.

In our decision we considered the proof of diligence submitted by Grier and Warren in moving to convert the joint application into a sole application and held that diligence was established and the Examiner of Interferences and Board of Appeals did not err in granting the motion.

As hereinbefore stated, in the case at bar the Board of Interference Examiners made no reference to the proceedings hereinbefore set out or to the fact that the Examiner of Interferences had found that the party Garlick et al. "has apparently been guilty of laches or a lack of diligence in seeking reformation of the interference," but apparently awarded priority of invention to Garlick as sole inventor regardless of whether he or the party Garlick et al. were diligent in seeking to reform the interference.

If the Examiner of Interferences erred in denying the various motions of Gar-

lick et al. the Board of Interference Examiners should have so held. If, on the other hand, the Examiner of Interferences did not so err, under the procedure set out in the case of In re Roberts, supra, relied upon by Garlick, it would seem that the award of priority to Garlick was improper.

That this question is relevant in this interference proceeding is plain.

If diligence was lacking by Garlick or Garlick et al. in the respects here discussed, the filing of a sole application by Garlick would not entitle him to the date of the joint application of the party Garlick et al., July 11, 1938, for constructive reduction to practice as found by the board, but he would be limited to the filing date of his sole application, and according to the facts found by the board priority could not be properly awarded to Garlick.

It is apparently the position of Garlick that parties to applications should be disregarded and that when there are two or more joint applicants for an invention each of them may under all circumstances be considered a separate party.

However, interferences are not alone between applications. They are instituted for the purpose of determining the question of priority between two or more parties claiming substantially the same invention. See Rule 94, Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix. That joint applicants are considered as a single entity is so well established that no citation of authority is necessary.

Therefore, an award of priority to one of joint applicants is improper unless such proceedings are had as to entitle the joint application to be considered as if it were a sole application.

Where there is a joint application alleging a joint invention which is placed in interference with another applicant, such applicant is entitled to rely upon the rule that conception and reduction to practice must be corroborated by evidence other than that given by the joint applicants.

When it is discovered by the joint applicants, who may actually have been joint inventors, that such corroborative evidence is lacking, the temptation is strong among those who are unscrupulous to claim that the invention was made by only one of the applicants in order that the testimony of the other applicants may be available for corroboration. We do not mean to intimate that such a situation is presented in the case at bar, but we mention it only as a reason why awards of priority to one of joint applicants should not be made in the absence of any showing of diligent effort by the joint applicants to reform the interference.

Whether in the case at bar sufficient diligence has been shown to entitle Garlick or the party Garlick et al. to reform the interference is a question that we do not think we should determine in this appeal, especially in view of the fact that the Examiner of Interferences found that such diligence was lacking, and so far as the record shows the Board of Interference Examiners did not consider this question.

Our conclusion therefore is that, for the reasons stated, the decision of the board should be reversed and the cause remanded, in order that the Board of Interference Examiners may decide the question of diligence by Garlick or the party Garlick et al. to convert the joint application into a sole application of Garlick.

If diligence was exercised by Garlick or Garlick et al., the award of priority to Garlick as sole inventor was proper. If otherwise, with respect to any or all of the counts, the board erred in its award of priority to Garlick and priority should, as between appellant and the *party Garlick, Lee and Barney,* be awarded to appellant with respect to any counts as to which there is found lack of diligence.

The findings of the board upon this subject will, of course, be subject to review in the manner provided by law.

Accordingly the decision appealed from is reversed and the cause is remanded for further proceedings.

Reversed and remanded.