47 CCPA

**Wilbur M. VAN OTTEREN**

v.

**William J. HAFNER and Gordon H. Cork.**

**Patent Appeal No. 6512.**

United States Court of Customs and Patent Appeals.

June 1, 1960.

Barnes, Kisselle, Raisch & Choate, John M. Kisselle, Detroit, Mich. (Alfonse J. D'Amico, Detroit, Mich., of counsel), for appellant.

Kotts & Sheridan, Earl F. Kotts, Dearborn, Mich. (James V. Sheridan, Dearborn, Mich., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH and MARTIN, Judges, and Judge C. WILLIAM KRAFT.[1]

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter in issue in interference No. 87,892 to the party Hafner and Cork.

The invention relates to a pneumatic dispatch system in which a cylindrical carrier is caused to move along a tubular conduit by differential air pressures, and in which the carrier may be automatically directed into a predetermined branch conduit. The entrances to the branch conduits are controlled by electromagnetically operated gates which are responsive to impulses induced in spaced coils surrounding the main conduit by the passage of correspondingly spaced magnets mounted on the carrier. By appropriate spacing of the magnets the carrier will be caused to actuate the gate of the desired branch and to enter that branch. The counts relate to the structure of the carrier by which provision is made for adjustably mounting the magnets, that structure being defined broadly in count 1 and more specifically in count 2. The counts read:

"1. In a message carrier system, a carrier adapted to travel along a conduit means, a guideway extending axially of said carrier, and a plurality of magnetic slugs polarized radially of said carrier and shiftable axially with respect to each other along said guideway.

"2. A carrier for use in a tube type conveyor having sets of receptor coils spaced axially at various distances on the tube exterior for creating electric impulses responsively to magnetic signals from within the tube, said carrier comprising, a body, said body being adapted to receive items to be conveyed, said body having an integral axially extending recess forming a track on its exterior, said track having sides extending generally rectilinearly and parallel to each other, a plurality of slides slidably mounted within said track, a magnet on each slide, a fixed magnet in said track adjacent one end of said body, said magnets extending generally radially of said body, each of said magnets having one pole disposed immediately adjacent the radial periphery of said body, each of said magnets having a length generally equal to the depth of said recess, at least two of said magnets having their poles reversed relatively to each other, said slides being movable selectively and independently for adjusting the intervals between said magnets, locking means on each of said slides, said locking means being engageable against one of said

1. United States District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge*

*O'CONNELL*, pursuant to provisions of Section 292(d), Title 28 U.S.C.

sides of said recess for locking said slides in selected positions."

■ Since the parties filed their applications on the same day, neither has a greater burden of proof than the other.

The record shows that during the first half of 1952, when the invention was made, Hafner and Cork were employed by Gemco Electric Company, and Van Otteren by the Grover Company. Gemco was desirous of developing an automatic pneumatic carrier system and consulted Grover for assistance in the development of the mechanical portion of the system. Thereafter work was done by representatives of the two companies in close association, with the result that the carrier in issue was conceived and reduced to practice in June 1952. The question involved is one of originality, since there is no contention that the invention was conceived by the parties independently.

■ Here, Van Otteren no longer contends that he is the sole inventor of the subject matter of the counts, but asserts that he made the invention jointly with Hafner. Hafner now agrees with that assertion, and executed papers jointly with Van Otteren for conversion of the Van Otteren application to a joint application of Hafner and Van Otteren. A motion to effect such conversion was filed May 1, 1958, together with a motion to amend Van Otteren's preliminary statement by filing a joint statement of Hafner and Van Otteren. Both motions were denied by the board and the instant appeal alleges error in such denial. That denial will be considered first. It is evident the amendment of the preliminary statement is contingent on the granting of the motion to convert. A sole applicant cannot contest an interference on the basis of a joint statement since Patent Office rule 216 provides that such a statement must state that the *applicant* made the invention in issue.

The conversion of a sole to a joint application was not authorized by law until January 1, 1953, when the Patent Act of 1952 became effective, and this court has not previously had occasion to consider the propriety of making such a conversion during an interference. However, the conversion of joint applications to sole applications, under proper circumstances, has been permitted since In re Roberts, 49 App.D.C. 250, 1920 C.D. 158. The question when such conversion, with a corresponding change of parties, can properly be made during an interference was fully considered in Crane v. Grier and Warren, 71 F.2d 180, 21 CCPA 1163; and Manny v. Garlick et al., 135 F.2d 757, 30 CCPA 1008. The same general principles are applicable here.

■ As was pointed out in the two cases cited, it is incumbent on a party who seeks to convert an application involved in an interference on the basis of a mistake resulting in failure to properly identify the inventorship in such application, to show that diligence was exercised in seeking conversion. In the instant case the affidavit of one of Van Otteren's attorneys in support of the motion to convert states that as the result of several interviews "shortly after the Interference was declared," (the declaration date was March 9, 1956), he informed Van Otteren and Hafner that the invention in issue was made either by them as joint inventors or by them jointly with Cork. Notwithstanding that fact, no move was made to convert the Van Otteren application, or to reform the interference until May 1, 1958, after both parties had completed their testimony and the time for taking rebuttal testimony by Hafner and Cork had expired.

Counsel for Van Otteren seek to justify the delay on the ground that they could not be sure, until all the testimony was completed, whether Cork should also be included as a joint inventor. We do not think that is a sufficient excuse.

In the first place, it is not clear how Cork could be a joint inventor with Hafner and Van Otteren without either of the latter being aware of it. If Cork was a joint inventor he must have made some significant suggestion to one or both of them, and since they were both available it should have been possible to ascertain

the facts before Van Otteren's preliminary statement was filed. It was incumbent on Hafner and Van Otteren to decide the question of inventorship to the best of their ability and proceed accordingly, without waiting to see what testimony would be offered on behalf of the party Hafner and Cork.

■■ Moreover, since it was considered clear shortly after the interference was declared that Van Otteren was not the sole inventor of the invention in issue, and that Hafner, at least, was a joint inventor with him, steps should have been promptly taken to add Hafner's name to the application, regardless of Cork's part in the matter. Manifestly a party is entitled to know in presenting his testimony and especially in conducting his cross-examination, whether his opponent is to be regarded as a sole inventor or as joint inventors. It was therefore Van Otteren's duty to advance the claim that Hafner was a joint inventor with him as soon as he concluded that such was the case.

Counsel for Van Otteren rely on an affidavit by James V. Sheridan, one of the attorneys for Hafner and Cork, which is of record and which shows that Sheridan knew in 1956 that Van Otteren's attorneys were studying the joint inventorship problem. However, since Van Otteren made no attempt to convert his application until the taking of testimony was complete in 1958, it would have been natural for counsel for Hafner and Cork to assume, throughout the taking of testimony, that Van Otteren had given up any idea that he was not a sole inventor.

In our opinion, Van Otteren did not exercise diligence in seeking to convert his application to a joint application or to amend his preliminary statement; thus the denial of his motions seeking to do so was therefore proper.

It follows that the issue to be determined here is whether priority should be awarded to Van Otteren as a sole inventor, or to Hafner and Cork as joint inventors.

The record fails to point out any specific suggestion made by Cork which was incorporated in the invention here in issue. Cork claims that he repeatedly discussed with Hafner the problems which arose during the development of the invention, and that each of them offered suggestions to the other. The documentary exhibits indicate that Cork was in reasonably close touch with the work from the time when the Grover and Gemco companies began their joint effort until the reduction to practice in June 1952.

■ It is well settled that a duly executed joint application is prima facie evidence of joint inventorship; Brown v. Edeler et al., 110 F.2d 858, 27 CCPA 1091, and cases there cited. Hafner, who at the time of taking testimony was hostile to Cork, indicated in his testimony that he could not recall any significant contribution to the invention which had been made by the latter. However, when the Hafner and Cork application here involved was executed, several years prior to the taking of testimony in the instant interference, Hafner stated under oath that he believed Cork to be a joint inventor with him of the carrier disclosed and claimed in that application, and it seems unlikely that his recollection of the circumstances surrounding the making of the invention had improved during that interim. Moreover, the fact that, during the same period, Hafner had left Cork's company and become associated in a business way with the Grover Company, Van Otteren's assignee, necessarily lessens the weight of his testimony.

■ We agree with the conclusion reached by the board that there is nothing of record which overcomes the presumption of joint inventorship arising from the Hafner and Cork application; accordingly, such contributions to the invention as are shown to have been made by Hafner must inure to the benefit of the party Hafner and Cork.

Hafner and Van Otteren worked together in the production of the device on which both parties rely for reduction to

practice, and the record shows that each of them made suggestions which were incorporated in the device. Accordingly it must be determined which of them made the suggestion which constituted the inventive concept defined in the counts.

Count 1 recites only two structural elements of the carrier, namely an axially extending guideway and radially polarized magnetic slugs shiftable axially with respect to each other along the guideway. Count 2, in addition to reciting these elements, is substantially more specific than count 1 in its recitation of the means for mounting and adjustment of the magnets, but we agree with the board that those features involve merely mechanical skill in specifically embodying the inventive concept of count 1. The essential features of the invention are those set forth in count 1. It follows that whoever invented the subject matter of count 1 is the inventor of the subject matter of count 2 also, and the latter count need not be further considered in detail.

The record shows that Van Otteren and Hafner worked together in developing the carrier in issue. The board found that the first carrier with which they experimented unsuccessfully had steel rings around the body of the carrier which, at the suggestion of Van Otteren, were replaced by a segment of a steel ring which could be slidably adjusted along a track recessed in the body of the carrier, but that arrangement also proved unsuccessful. Thereafter, as found by the board, it was Hafner who suggested use of radially polarized magnets. Upon incorporation of such magnets the carrier proved successful. Those findings by the board are amply supported by the record and do not appear to be controverted here.

The board concluded that Hafner's suggestion was the spark which led to the final satisfactory result, and therefore Hafner was to be regarded as the inventor. We agree with that conclusion. It is true, as Van Otteren points out, that Hafner's suggestion resulted from Van Otteren's use of a steel segment mounted in a slot, but the first conception of the complete invention was disclosed by Hafner. Once the idea of using magnets was advanced against the background of the prior disclosure of the movable segment, all that remained to be done was to work out the mechanical details of mounting the magnets.

The instant case is quite similar to O'Donnell v. Hartt, 75 F.2d 195, 22 CCPA 958, cited by the board. The essence of the invention there consisted in blowing a hot gaseous fluid against an adhesively coated surface. The record showed that Hartt has suggested to O'Donnell the use of a gas flame or a hot gas for applying heat to the surface, but not the actual process of blowing the gas against the surface. The idea of blowing was thought of by O'Donnell independently. It was held that since the blowing was the essential feature of the invention, it could not be said that Hartt disclosed the invention to O'Donnell; and priority was awarded to the latter. Similarly, Van Otteren's suggestion of using a metal segment in a slot in the carrier did not amount to a disclosure of the invention here in issue. It was only when the idea of using radially polarized magnets was added that the conception of the invention was complete.

Another case in which priority was awarded to the party who made a vitalizing suggestion, rather than to his opponent who had disclosed the background of the invention to him, is Tolle et al. v. Starkey, 255 F.2d 935, 45 CCPA 979, also cited by the board.

■ We agree with the board that the only issue with which we are concerned is priority of invention between Van Otteren as a sole inventor and Hafner and Cork as joint inventors. For the reasons given, we also agree with the board that, as between those parties, Hafner and Cork must be regarded as having contributed the feature which renders the count patentable, hence should receive the award of priority.

The decision is affirmed.

Affirmed.

MARTIN, J., sat, but did not participate in decision.

SMITH, J., did not sit or participate in decision.